40996. VETERANS ORGANIZATION OF FORT OGLETHORPE, GA., INC. v. POTTER.

DECIDED JANUARY 27, 1965—REHEARING DENIED FEBRUARY 17, 1965.

*Paul W. Painter, Spears, Moore, Rebman & Williams, Silas Williams,* for plaintiff in error.

*Gleason & Brown, Frank M. Gleason,* contra.

RUSSELL, Judge. ■ The evidence in the case wholly fails to substantiate the first count of the petition. The uncontradicted testimony is that the dance floor of the club was of asphalt tile, that it was waxed once a week and had last been waxed six days before the night of the dance; that there had been heavy

traffic over the area throughout the week; that on the night in question the entertainment had been going on four or five hours before the plaintiff's husband met with his accident, and there was a large crowd of people, probably more than 50 to 100 participants. One person testified that in his opinion the floor was slick but that he had no trouble walking or dancing on it. Many testified that it was not, and no one testified that he found it difficult to walk or dance. Since there was an orchestra and dancing was in progress it is obvious that carpeting would have defeated the purpose of the entertainment. Further, there is no hint of testimony that there was any slick spot on the floor where the deceased fell, and there was of course no testimony that any foreign substance was present and known to the defendant or had been there long enough so that constructive knowledge might be assumed. Accordingly, count 1 is totally without evidence to support it.

As to count 2, the facts are a little more difficult to ascertain. At about 1:45 a.m. on Sunday, when a number of people had left but there was still a good crowd in the large clubroom, tables had been pushed back against the wall and the main floor area was left open for dancing. A police officer, Moore, who was hired by the defendant to keep order, was present during the entire evening. Two other policemen were outside or had just entered the room at the time and Robbins, vice-president of the club and commander of the local VFW, was in charge of the entertainment and standing by the front door where he had been all evening, letting people in and out. A group of patrons was seated at one of the tables on the far side of the room 40 or 50 feet away from the door. Charlie Potter, the plaintiff's husband, had been present during the evening; he was a quiet man, had not been drinking, and did not engage in any fighting. He may or may not have been with the group at the table when an altercation broke out between his brother Gordon and another man, who exchanged blows, whereupon Officer Moore immediately dashed up to the table and, helped by others present, separated the men. Gordon was temporarily held against the wall. There was at this time a lot of loud talking, cursing and commotion. Some distance away on the same side of the room

one of the tables was knocked over and a soft drink bottle fell in the lap of one of the guests, who grabbed at it. This act was misinterpreted by a guest at another table who thought he was going to throw the bottle at Officer Moore, then in the act of restraining Gordon Potter, and the observer hit the man with the bottle with his fist. By this time the three officers, or at least Moore and Friel, had broken up the fight. Estimates of its duration were from a few seconds to not over five minutes.

Charles Potter was then noticed lying on the floor 20 to 25 feet away. The back of his head had struck the floor and he died of cerebral concussion. Dempsey testified that Charles was not around the table when the fight started, that Gordon hit him and "there wasn't any fight to it, Potter hit me and before I could hit him, the policeman was across the floor ahold of me." Robbins testified that he was standing across the room by the door and Charles came out on the floor, that he walked over four or five steps to him, that Gordon came up, that the witness said, "Let's don't have any trouble around here, Charles," and about that time Charles just stepped backward and fell to the floor; that no one touched him, he just fell backward. Gordon testified that he saw Robbins and Charles standing together talking out in the middle of the floor just after the fight started and while he was being held against the wall; that he told the boy to turn him loose, he wanted to talk to Charles, "and then this commotion started and he was down on the floor." He did not indicate, however, that there was any commotion involving his brother and Robbins. Some witnesses testified that there was a free-for-all and "fists were flying." One witness thought that when Gordon Potter hit Dempsey the deceased started over toward him to quiet him. Officer Moore testified that he saw Charles standing back towards the door alone, bothering nobody, that Charles passed him falling backward with his hands thrown up, as Moore went toward the fight (between Gordon and Dempsey) ; that the fight had already started, that while Moore never saw Charles being hit he did see a fist coming toward his face and Charles staggered backward and fell. Asked whether he saw anybody hit Charles Potter he replied, "To see the lick, to swear I saw him hit, I

couldn't, but I saw the fist acoming in his face . . . to use a little common sense would teach you that he had to be hit to be acoming back across that building like he was coming, off balance . . . from where I was asetting, it looked like that he had smacked him one right in the face . . . the one that was throwing the fist that was straight across from where Charles Potter stood was Mr. Jim Dempsey." Dempsey testified that he did not hit Charles and that Charles was not at the table when Gordon hit him. Mrs. Dunn, a local business woman, testified that she came out from the kitchen when the altercation started and saw Robbins, the manager, with his arms around Potter from the back, trying to get him away from where they were arguing; Robbins, however, did not indicate that he physically intervened in any way, and placed both brothers as standing with him in the center of the room when "Charles just stepped backwards and fell backwards."

Medical testimony was to the effect that the plaintiff's husband died of a cerebral hemorrhage which might have been caused by the deceased falling and hitting his head on the floor, and that the only marks of external violence, two small lacerations on the back of the head, might well have been caused by the fall.

The liability of a proprietor under *Code* § 105-401 which results from failure to keep the premises safe always depends on notice of the danger except where notice is presumed, as in cases of defective construction. "Under numerous decisions of this court, an occupier of land is not liable for injuries sustained by an invitee upon the premises unless a dangerous condition was created by the occupier or his employee or by a third person, and in the latter case there is liability only after the occupier has knowledge of, or by exercise of ordinary care could have discovered, the hazardous condition, and then fails to use reasonable care to eliminate it." *Norwood v. Belk-Hudson Co.,* 107 Ga. App. 278, 280 (129 SE2d 810). "No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff." *Watson v. Citizens &c. Bank,* 103

Ga. App. 535, 536 (120 SE2d 62). "An owner of premises is liable to a guest . . . when the owner has reason to anticipate the misconduct of the guest inflicting the injury" but not otherwise, for the owner is not the insurer of the safety of guests. *Georgia Bowling Enterprises, Inc. v. Robbins,* 103 Ga. App. 286 (119 SE2d 52). In the *Robbins* case the manager's wife, who was known to have previously assaulted children placed in her care, injured the plaintiff and because of this a right of action accrued against the defendant employer. In *Adamson v. Hand,* 93 Ga. App. 5 (90 SE2d 669) a quarrel broke out between two customers of the defendant which was allowed to proceed unchecked for five or ten minutes and the plaintiff, another customer, was eventually shot by a stray bullet. Negligence was alleged in that no effort was made either to personally intervene or to call the police. *Hall v. Davis,* 75 Ga. App. 819 (44 SE2d 685) was also decided on demurrer, and again negligence was alleged on the part of the proprietor in admitting a drunk and quarrelsome customer, in allowing him to remain with knowledge of his condition, and in doing nothing after he had caused preliminary commotion and argument. The same situation obtains in *Moone v. Smith,* 6 Ga. App. 649 (65 SE 712) where there had been a continuous brawl for 10 or 15 minutes without any intervention on the part of the defendant.

The allegation of negligence that the plaintiff's husband was struck by a bottle by another customer is entirely unsupported by evidence. There is evidence unobjected to from which an inference is authorized that he was hit by a fellow guest and knocked to the floor, and the petition might have been amended to allege this act, so it cannot be said that the evidence demands a finding that the death was not caused by the act of a fellow participant. See *Harvey v. DeWeill,* 102 Ga. App. 394 (116 SE2d 747). There is, however, no evidence that the defendant, through its agents in charge of the dance, failed to exercise ordinary care to protect Potter and the other guests. The allegation that the defendant did not intervene or call in the police when the affray first started between Gordon Potter and Dempsey is disproved by uncontradicted evidence that Moore was hired for the express purpose of quelling any disorder and

that immediately on the blow being struck he ran to the table where the men were and separated them. No disorder prior to this appears from the evidence, and the fight was successfully stopped within moments of its occurrence. The proprietor is not the insurer of the safety of those present. If Moore's testimony is correct, he saw what might have been a blow directed at the deceased on Moore's way *to* the table; that is, within seconds after the altercation began. All of the other testimony places Charles Potter in another part of the room at the time and negatives any inference that he was hit by anyone. In these circumstances, the defendant's contention that he sustained a cerebral hemorrhage which caused him to fall is as probable as the hypothesis that he was struck, but even if he were struck it was at a time when the defendant had no prior notice, and therefore no duty to protect.

The trial court erred in denying the motion for judgment notwithstanding the verdict.

*Judgment reversed. Nichols, P. J., and Hall, J., concur.*