## 47031. MOODY v. SOUTHLAND INVESTMENT CORPORATION.

Submitted April 5, 1972—Decided May 5, 1972.

*Kyle Yancey,* for appellant.

*VanGerpen & Bovis, John M. Bovis, Stephen J. Kyle,* for appellee.

EBERHARDT, Presiding Judge. ■ "Purposeful footsteps, impact, the harsh, shattering crash of jagged spears of glass falling and disintegrating on the floor, and disabling and disfiguring injuries or death—this sequence of events is acted out, according to safety experts, in 40,000 American homes annually." Wolfstone, "Glass Door Accidents," 14 AmJur Trials 101, 105. "Glass door accident cases are of two types: (1) those in which the door is defective, as where the glass shatters upon touch, because of unusual stresses imposed on it by its frame, [see *Shannon v. Bigelow-Sanford Carpet Co.,* 96 Ga. App. 458 (100 SE2d 478); *Seaview Development Co. v. Galanti,* 118 Ga. App. 378 (163 SE2d 845); *Dawson v. American Heritage Life Ins. Co.,* 121 Ga. App. 266 (173 SE2d 424)]; and (2) those in which the plaintiff is unaware that he is approaching a glass door and collides with it, the glass breaking and falling upon his head and shoulders. Cases of the second type, referred to as 'illusion of space' cases, are the most common . . . Glass door injuries on residential premises ordinarily occur when a person walks against or through a sliding glass door leading to an outdoor recreation area, such as a patio. Such doors may be open at one moment and closed the next. A person who has only moments earlier passed through an open sliding glass doorway frequently is not aware that the door has been closed and may walk into it. In most of these cases, the plaintiff was aware that the sliding doorway existed, but the illusion of space, coupled with his immediately preceding experience that the door was open, operated to create a trap." Wolfstone, supra, pp. 107, 122. See also 5 AmJur POF, Glass, p. 413 et seq.

Remedial legislation is found in Ga. L. 1970, pp. 151-153, as amended (*Code Ann.* § 92A-2001 et seq.);[1] but since this legislation was not in effect at the time of the injury complained of, and hence will not support a finding of negligence per se, the question before us is whether the evidence otherwise would have authorized a finding of negligence on the part of defendant landlord in maintaining the sliding door with sheet glass without decals or other markers to indicate when the door was closed. The trial judge apparently felt that since sheet glass was frequently used in this type construction, the question as to negligence in this regard was doubtful; that even if transparent tempered glass had been used, plaintiff, under the circumstances of the case, would nevertheless have walked into the door and perhaps suffered a bruise; and, more importantly, that he felt *Brand v. Pope,* 103 Ga. App. 489 (119 SE2d 723) required him to direct the verdict for defendant.

In the *Brand* case, plaintiff, who was treated by this court as an invitee, alleged that she had been visiting with defendant's wife and another in defendant's living room. Between the living room and the Florida room there was a sliding glass door which had remained open most of the afternoon. When defendant arrived home and was proceeding through the Florida room to the living room, plaintiff went forward to greet him and crashed through the glass panel door which had been closed by defendant's servant sometime during the afternoon. This court, in affirming the sustaining of defendant's general demurrer, construed the

---

[1]"An Act to prohibit the use, sale, fabrication, assembly, glazing, installation of products commonly known as sliding glass doors, entrance doors, fixed glazed panels, storm doors, shower doors; tub enclosures or other glazed structures for use in hazardous locations, or on any public bus or train unless they contain safety glazing material; to define terms; to require certain labeling; to require posting, painting or marking of certain doors; to provide penalties; to repeal conflicting laws; and for other purposes."

petition against plaintiff as alleging only that defendant should not have had a sliding glass door between the two rooms, "for no defect in the construction of the door itself was alleged nor was it alleged that the defendant was negligent in the maintenance of such door other than allowing it to be closed without prior warning to the plaintiff." P. 491. The holding there was that "The door was to be expected, and under the allegations of the petition, it could not have been completely invisible and, since no defect in the manner of construction was alleged, the plaintiff's petition was properly dismissed on general demurrer, since the petition nowhere makes it appear that the premises were less safe than those provided by ordinarily prudent owners and occupiers of land. And it is only where premises are less safe than those provided by ordinarily prudent owners and occupiers of land that a warning need be given to an invitee of their condition." P. 492.

We do not regard *Brand* as controlling here, for in that case the distinction between the safety characteristics of sheet glass and safety glass was not developed. In the instant case there is sufficient evidence to authorize a jury to conclude that the use of sheet glass rather than some type of safety glass, such as tempered glass, particularly when unmarked by decals or otherwise, rendered the premises less safe than those provided by ordinarily prudent landlords, owners, or occupiers of land. This evidence removes the instant case from the *Brand* ruling. *Cox v. DeJarnette,* 104 Ga. App. 664, 678 (123 SE2d 16). See *Code* § 61-112 as to the landlord's duty.

*Brand* was distinguished and not followed in two glass door cases, *Sanders v. Alpha Gamma Alumni Chapter,* 106 Ga. App. 137 (126 SE2d 545) and *Massey v. Hilton Heights Park,* 121 Ga. App. 214 (173 SE2d 396). In the latter case, the minor plaintiff and others stopped to look at a house which was for sale. "There was an exit from the den or family room of the house onto an open area porch in the back yard. The exit consisted of a unit of about normal door height, built into the wall. The unit consisted of a

large metal frame which enclosed two panels of glass. Each panel of glass was in turn enclosed in its own metal frame within the larger frame. One glass panel was stationary. The other was movable and could be used as a door by sliding it past the stationary panel. It is not disputed that the plaintiff struck the stationary panel and it broke, causing her injuries." P. 215. There was evidence that the glass panel was clear and transparent and gave an illusion of space when looking into the back yard from inside the house, and that there were no strips, markers, or stickers on the panel to indicate that it existed. In reversing the grant of summary judgment for defendants, we stated, inter alia, "[W]e do not agree with the defendants' contention that the fact that the injury was connected with a glass-door unit of a type which is widely used in most modern residential buildings is determinative of the case and requires a finding that there can be no negligence attributable to defendants as a matter of law. We can not say that glass doors or glass panels in general are not perils requiring no precautions or warning." Hn. 1.

This holding is in accord with negligence law generally. "Although there is some authority in trade and business cases to a different effect, the rule which has been supported generally by most of the authorities and which appears to be sound is that conformity to custom is not in itself the exercise of due care. Usage and custom do not justify negligence. A number of cases support the view that since negligence is the failure to do that which an ordinarily prudent man would do, or the doing of that which an ordinarily prudent man would not do, under the same circumstances, an ordinary custom, while relevant and admissible in evidence on the issue of negligence, is not conclusive, especially where the custom is clearly a careless or dangerous one. What usually is done may be evidence of what ought to be done, but in the last analysis, what ought to be done is fixed according to the standard of the ordinarily prudent man, whether or not it is customary to comply with that standard." 57 AmJur2d 428, Negligence, § 78. Ac-

cord: *Shirley v. Woods,* 98 Ga. App. 111, 115 (105 SE2d 399); *Dawkins v. Jones,* 119 Ga. App. 796, 798 (168 SE2d 881); *Stuckey's Carriage Inn v. Phillips,* 122 Ga. App. 681, 688 (178 SE2d 543); *Georgia-Alabama Coca-Cola Bottling Co. v. White,* 55 Ga. App. 706, 713 (191 SE 265); *City of Macon v. Yaughn,* 83 Ga. App. 610, 614 (64 SE2d 369); *Arnold v. Chupp,* 93 Ga. App. 583, 585 (92 SE2d 239); Prosser, Torts § 33 (3d Ed. 1964); 2 Harper & James, Torts § 17.3 (1956).

We conclude that under the evidence of this case, the jury might properly have found that defendant's use of sheet glass, which has a greater potential for harm than safety glass, coupled with defendant's failure to mark the glass with decals or otherwise, constituted actionable negligence.

■ Whether plaintiff's injuries were proximately caused by her own negligence was also for the jury. Had markers been placed on the glass sufficient to divert the eye, the illusion of space which plaintiff suffered, causing her to assume the glass was open, might have been prevented. And, if, during the rest break, plaintiff assumed or became aware that the glass had been closed, and had not been reopened, we are not prepared to hold that her momentary forgetfulness of the hazard constituted negligence as a matter of law, particularly where the hazard consisted of the invisibility of transparent glass which, by its very nature, may deceive the most prudent person.

■ Plaintiff enumerates as error the trial court's refusal to permit her to introduce evidence relating to the difference in cost between the installation of sheet glass and tempered glass, and evidence as to the cost of placing decals or markers on the glass door. It is her contention that evidence as to these costs is relevant in determining what a reasonably prudent landlord would do under the circumstances. While we are cited no cases in our own courts as to the admissibility of such evidence, it appears to be the rule elsewhere that the cost of taking precautions or providing safeguards may be shown on the question of their feasibility for re-

moving or minimizing danger. Pocholec v. Giustina, 224 Ore. 245 (13, 14) (355 P2d 1104); Cole v. North Danville Co-Op Creamery Assn., 103 Vt. 32 (13) (151 A 568); Presti v. O'Donahue, 25 Wis. 2d 594 (131 NW2d 273); Tvedt v. Wheeler, 70 Minn. 161 (3) (72 NW 1062); Vegodsky v. City of Tucson, 1 Ariz. App. 102 (399 P2d 723); Spilene v. Salmon Falls Mfg. Co., 79 N. H. 326 (5) (108 A 808). Accordingly it was error to exclude this evidence.

*Judgment reversed. Deen and Clark, JJ., concur.*