Mary Lynn PHILLIPS and Mark A. Phillips, Plaintiffs-Appellees,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

No. 85–9009.

United States Court of Appeals, Eleventh Circuit.

April 6, 1987.

Lowell S. Fine, G. Michael Banick, Atlanta, Ga., for defendant-appellant.

John E. Kardos, Athens, Ga., Barry L. Fitzpatrick, Danielsville, Ga., for plaintiffs-appellees.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

VANCE, Circuit Judge:

Plaintiff Mark Phillips brought an action against Liberty Mutual Insurance Company ("Liberty Mutual") and Symons Corporation ("Symons") claiming damages for personal injuries he sustained while working for Dravo-Groves Construction Company ("Dravo") on a construction site at the Richard B. Russell Dam. Mark Phillips' wife, Mary Phillips, filed an action against Liberty Mutual and Symons for loss of consortium. Liberty Mutual insured Dravo for general liability and workmen's compensation. Liberty Mutual also conducted periodic inspections of the Dravo construction site as part of a loss prevention program. Symons designed and manufactured the scaffolding from which Mark Phillips fell 37 feet, sustaining his injuries.

Prior to trial Mark and Mary Phillips settled their claims against Symons in return for $55,261. Since Symons was still subject to a possible contribution claim for any judgment obtained from Liberty Mutual, an agreement was secured where Liberty Mutual agreed to waive contribution up to $55,261, and any verdict obtained against Liberty Mutual in excess of that sum would be borne by Liberty Mutual and Symons in equal parts. At the same time the Phillips agreed to indemnify Symons for any contribution obtained from it by Liberty Mutual up to the $55,261.

The action against Liberty Mutual was based on the tort of negligent inspection. At trial Liberty Mutual moved for a directed verdict on the ground that the plaintiffs had not produced sufficient evidence to establish a jury question on the issue of "employer reliance," the only disputed factual issue. The trial court denied the motion. The jury returned a verdict against Mary Phillips, but awarded $60,000 to Mark Phillips. Liberty Mutual then moved for a judgment n.o.v., which the court denied.

During the trial Liberty Mutual attempted to introduce evidence of approximately $48,000 in workmen's compensation payments it made to Mark Phillips under the Dravo workmen's compensation policy. The district court ruled that evidence of these payments was not admissible. After the verdict was handed down, the court refused to offset the payments against the verdict. Liberty Mutual also moved to have the Symons settlement offset the verdict. The district court rejected Liberty Mutual's motion to have the Symons settlement offset the verdict and a subsequent motion for new trial based upon the same argument.

Liberty Mutual appeals the district court's denial of a directed verdict and judgment n.o.v., the court's refusal to offset the workmen's compensation payments and the Symons settlement against the verdict, and the court's refusal to grant a new trial. We affirm.

I.

 The Phillips based their claims against Liberty Mutual on the theory of negligent inspection. In the present context, where physical injuries were suffered while on a job site, this theory allows a person to recover for physical harm resulting from a third person's failure to exercise reasonable care in conducting inspections if the harm is suffered because the employer

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

relied upon the inspections. *See* Restatement (Second) of Torts § 324A.

After pretrial motions and rulings by the court, the only disputed issue left for trial was whether Dravo relied upon Liberty Mutual's inspections. The Georgia courts have "interpreted Georgia law to require that an *employer's* reliance be shown by evidence of change in position. Thus, we were unable to find *employer* reliance where 'there was no indication that the employer had neglected or reduced its own safety program because of the [third person's inspections].'" *Universal Underwriters Insurance Co. v. Smith*, 253 Ga. 588, 322 S.E.2d 269, 271 (1984) (emphasis in original) (quoting *Bussey v. Travelers Insurance Co.*, 643 F.2d 1075 (5th Cir. Unit B 1981)). Liberty Mutual argues that the Phillips failed to produce any evidence that Dravo reduced or neglected its safety practices because of Liberty Mutual's inspections. For this reason, Liberty Mutual contends that the district court erred in failing to grant a directed verdict or judgment notwithstanding the verdict in its favor.

We conclude, however, that the plaintiffs did establish a jury question on the issue of employer reliance. While there appears to be no direct evidence that Dravo neglected or reduced its safety practices because of Liberty Mutual's inspections, there is substantial circumstantial evidence from which a jury could reasonably infer that Dravo had indeed reduced or neglected its safety practices.

James H. Goldsmith, Jr., a senior loss prevention specialist for Liberty Mutual, testified at trial that Dravo requested assistance in conducting safety inspections. Goldsmith's testimony, coupled with the documentary evidence, established that Liberty Mutual conducted roughly one inspection per month on the construction site during the five months prior to Mark Phillips' fall. Evidence was introduced that Dravo complained to Liberty Mutual about its personnel turnover on certain jobs and the effect this turnover would have on Liberty Mutual's service. The evidence also indicated that Dravo hired a "safety man" a year following Mark Phillips' fall.

Perhaps the most probative bit of evidence is internal correspondence by Liberty Mutual which indicates that Dravo was asking Liberty Mutual to inspect at least monthly because the job was in a phase of serious exposure. The obvious inference to be drawn from this correspondence is that had Liberty Mutual not conducted inspections, Dravo would have inspected to meet what it perceived to be a high-risk phase of their work. A general inference can be drawn that Dravo was relying all along on Liberty Mutual's inspections and would have stepped in had Liberty Mutual not undertaken to inspect.

While the evidence presented did not directly establish that Dravo neglected or reduced its inspection practices, the cases cited by Liberty Mutual, *Bussey v. Travelers Insurance Co.*, 643 F.2d 1075 (5th Cir. Unit B 1981); *Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir.1975); *Stacy v. Aetna Casualty & Surety Co.*, 484 F.2d 289 (5th Cir.1973), do not stand for the proposition that direct evidence of neglect or reduction of inspections is required to establish a jury question on employer reliance. The district court correctly denied Liberty Mutual's motions for directed verdict and judgment n.o.v.

## II.

Liberty Mutual paid Mark Phillips approximately $48,000 pursuant to Dravo's workmen's compensation policy for the same accident which is the subject of this case. Liberty Mutual argues that the district court improperly allowed double recovery by refusing to offset the workmen's compensation payments against the $60,000 verdict. We disagree.

Liberty Mutual relies upon dictum in a footnote to a Georgia Supreme Court decision which states:

[A]n argument could still be made that *if the employer's negligence in fact contributed to the employee's injury,* the defendant in the tort action filed by the employee is nonetheless entitled to set off the amount of workers' compensation paid by the employer from the verdict.

*Sargent Industries, Inc. v. Delta Air Lines, Inc.*, 251 Ga. 91, 303 S.E.2d 108, 110 n. 1 (1983) (emphasis added). Even if this language is accepted as an accurate statement of Georgia law, it is not applicable to this case. Here, the issue of employer negligence was not tried below, and Liberty Mutual thus did not establish that Dravo was a joint-tortfeasor. The payments in this instance were made pursuant to a independent contractual obligation, and cannot properly be characterized as damage payments made by a joint-tortfeasor. Accordingly, no double recovery was shown.[1]

### III.

█ The Phillips settled their claims against Symons in exchange for $55,261. Liberty Mutual argues that the district court improperly allowed double recovery by refusing to offset the settlement against the verdict. Again, we disagree.

Where one of two or more alleged joint-tortfeasors settles a claim, the settlement amount ordinarily should be set off against any judgment obtained against the other joint-tortfeasors. *See, e.g., American Chain and Cable Co., Inc. v. Brunson*, 157 Ga.App. 833, 837, 278 S.E.2d 719 (1981); *Ford Motor Co. v. Lee*, 237 Ga. 554, 229 S.E.2d 379 (1976). There is, however, a well settled rule in Georgia that in order for the trial court to give effect to a claimed setoff, the amount must be certain from the evidence. *See Collins v. Strickland Bros.*, 21 Ga.App. 542, 543, 94 S.E. 1035 (1917). The amount of offset must be "definite and readily ascertainable." *See Woodbury v. Whitmire*, 246 Ga. 349, 350, 271 S.E.2d 491 (1980).

In the present case, the Symons payment was made to settle both Mark and Mary Phillips' claims against Symons. The settlement agreement did not state the amount Mark Phillips and Mary Phillips were to each receive for his or her respective claim. Liberty Mutual argues that the agreements contemplated apportionment of the Symons payment between Mark and Mary Phillips in proportion to the amounts subsequently awarded Mark and Mary Phillips in their action against Liberty Mutual.[2] Even assuming an agreement can effectively allocate a settlement *post hoc*, the agreements in question are ambiguous. The agreements can be construed as merely providing a formula to resolve claims for indemnification and contribution among the joint-tortfeasors, rather than as actually apportioning the Symons payment between Mark Phillips and Mary Phillips. The law has placed the burden on the defendant to show a definite amount of offset. Liberty Mutual did not prove the intention of the parties concerning the purpose of the allocation cause,[3] and the court was left with

1. Workmen's compensation payments historically have been treated as "collateral source" payments not available to offset damage awards obtained for the same injury. *See Mixon v. Lovett*, 122 Ga.App. 517, 519, 177 S.E.2d 826 (1970). *See also McGlohon v. Ogden*, 251 Ga. 625, 625 n. 1, 308 S.E.2d 541 (1983); *Cincinnati, New Orleans & Texas Pacific Railway Co. v. Hilley*, 121 Ga.App. 196, 201 n. 2, 173 S.E.2d 242 (1970). Liberty Mutual argues that the collateral source rule does not bar offset because both the workmen's compensation payments and the damage award are to be paid by Liberty Mutual. This argument, however, ignores the fact that Dravo is the primary obligor of workmen's compensation payments under federal law, and that Liberty Mutual was merely insuring payment of this obligation.

2. The agreement between the Phillips and Symons read in part:

 [S]hould the plaintiffs, or either of them, receive or recover damages from Liberty Mutual Insurance Company, the amount to be paid [as indemnification] by Mark Phillips or Mary Lynn Phillips to Symons Corporation, if anything, shall be calculated based on an allocation of Symons' $55,261.00 present value payment between the two claims (Mark Phillips' and Mary Lynn Phillips') so that the amount allocated to each claim shall bear the same fractional relationship to the total of $55,261.00 as does the individual recovery of each plaintiff, if any, to the total recovered by them, if anything.

3. Liberty Mutual failed to object to the court's ruling that the issue of setoff would be taken up after the verdict. Prior to the verdict, Liberty Mutual never indicated to the court that there was a question of fact concerning the meaning of the allocation clause and the intention of the parties in adopting that clause. The extent of Liberty Mutual's colloquy with the court on this issue was as follows:

 Mr. BANICK: There's another question of setoff in this case which your honor may or may not be aware of. As you know, Symons Cor-

an ambiguous agreement. Thus the district court correctly determined that the amounts paid to each plaintiff were not definite and readily ascertainable and cannot offset the verdict. Since Liberty Mutual requested a new trial based upon the same argument, the district court's denial of a new trial was likewise correct.[4]

### CONCLUSION

Sufficient evidence was presented to create a jury question as to Dravo's reliance on Liberty Mutual's safety inspections. The trial court correctly denied offset of workmen's compensation payments and the Symons settlement payment.

AFFIRMED.

poration has settled with the plaintiff for the approximate sum of $62,000.00 and we would ask the court to deduct that amount from any verdict that would be entered into.

THE COURT: We'll take that up also after the verdict.

MR. BANICK: Okay.

THE COURT: But that—Evidence of that should not go to the jury.

MR. BANICK: That's what we wanted to know.

3. While this court concedes that our conclusion could theoretically allow double recovery, Liberty Mutual was not coerced into its waiver of contribution up to $55,261, nor was it precluded from demanding that the Symons settlement be specifically allocated between the two parties in exchange for its waiver. It was well within Liberty Mutual's ability to foresee and avoid the problem of double recovery.