76387. HARVEY FREEMAN & SONS, INC. v. STANLEY et al.
76388. HARVEY FREEMAN & SONS, INC. v. RIVERS et al.
(375 SE2d 261)

DEEN, Presiding Judge.

Appellee-plaintiffs are minor female residents of an apartment complex owned by appellant-defendant. Appellees filed separate complaints against appellant, each alleging that she had been subjected to an ongoing series of sexually abusive acts which had been committed by Mrs. Sandy Clark and her husband.

Appellant answered, denying the material allegations of appellees' complaints. After a period of discovery, appellant filed a motion for summary judgment in each case. The trial court granted the motions as to appellant's liability under the theory of respondeat superior. However, the trial court denied the motions as to appellant's liability for its own alleged negligent hiring or retention of the resident manager. The trial court certified for immediate review its denials of appellant's motions for summary judgment. Appellant's applications to this court for an interlocutory appeal were granted. Because appellant's appeals are based upon essentially the same factual occurrences and raise the identical legal issues, they are hereby consolidated for disposition in this single opinion.

The evidence showed that Sandy Clark was a resident manager of Bingham Court Apartments owned by Harvey Freeman & Sons, Inc., at the time the alleged events occurred. Mrs. Clark, as resident manager, and her husband, Daniel Clark, were provided an apartment on the premises. At the apartment complex the Clarks repeatedly participated in illegal and immoral conduct on the premises of Bingham Court Apartments of which other employees of Harvey Freeman had knowledge. For example, the Clarks engaged in swapping sexual partners with other residents of the apartments; Mrs. Clark admitted to having had lesbian relations with another tenant; and other residents testified that they were asked by the Clarks to be involved in a sexual threesome.

Additionally, the Clarks possessed, used, and sold drugs on the premises of Bingham Court Apartments. Mrs. Clark admitted in her deposition testimony that Jenny Raffa, the assistant manager, was aware of such conduct. Also, several tenants testified that the Clarks' possession, use, and sale of illegal drugs was "common knowledge" at the apartment complex.

The acts appellees complain of occurred during the summer of 1985. During this time, both young girls were tenants of Bingham Court Apartments; one appellee was 14 years old; the other appellee was 13 years old at the start of the summer, but became 14 years old on July 5th.

On June 28, 1985, Dan Clark led one appellee to the resident

manager's unit to "show her something." Once inside, Clark forced sexual relations with her. Subsequent to this occurrence, Sandy Clark attempted to make her take oral contraceptives.

The second incident occurred later in July, when the Clarks had arranged to take both appellees on a camping trip to the lake. Although they were scheduled to leave on Friday, the Clarks were not prepared, so the two girls spent the night at the Clarks' apartment. During the evening, the Clarks supplied the girls with alcohol and marijuana, and then insisted that the two minors undress and take a shower with them. After the shower, the two were led to the bedroom where both Sandy and Dan Clark fondled them.

Because the young girls were confused and felt that what had occurred the night before would be inexplicable to their parents, the appellees made the trip to the lake with the Clarks the following day instead of going home. Once at the lake, however, they realized the Clarks intended to repeat the same conduct of the night before. One appellee was able to procure a ride back to the apartments on a motorcycle, but, because no other form of transportation was available, the other appellee was forced to stay. During the course of the day, the Clarks supplied this appellee with marijuana laced with cocaine. Later, both Sandy and Dan Clark fondled her and, despite her protests, Dan proceeded to have sexual intercourse with her. *Held*:

1. Appellant contends that the theory of negligent hiring/retention is conceptually inappropriate under the facts of the present case, relying on *Lear Siegler, Inc. v. Stegall*, 184 Ga. App. 27 (360 SE2d 619) (1987), which states: "An examination of the cases dealing with negligent hiring reveals that in each instance, at the very least the tortious act occurred during the tortfeasor's working hours or the employee was acting under color of employment. [Cits.]" *Lear Siegler*, supra at 28.

In *Lear Siegler*, the defendant's employee had an automobile accident while he was driving a company-supplied vehicle to work. The plaintiff claimed that the defendant was negligent in its hiring of the employee, but this court held that "under the facts of this case" the theory of negligent hiring was conceptually inapplicable. Id. In effect, the holding in *Lear Siegler* acts to shield employers from liability for those torts his employee commits on the public in general. In the present case, however, the alleged tortious conduct was committed, not on the public in general, but on two young girls who were associated with appellant through a landlord-tenant relationship. Because of the special relationship existing between appellant and appellees in the present case, the potential direct liability of employers would not rest simply upon their hiring or retention of an employee without regard to whether the employee had committed a tort while ostensibly acting in the capacity of employee.

Furthermore, as landlord, Harvey Freeman chose to bestow the comprehensive duties of resident manager to Sandy Clark. Mrs. Clark testified in her deposition that as resident manager, she was expected to be available to the tenants 24 hours a day.

The facts of this case do not fit the rule of *Lear Siegler*. It is for the jury to determine whether appellant, as landlord, sufficiently fulfilled its duty to exercise ordinary care in the hiring/retention of Clark.

2. Appellant also contends·that there was no evidence showing that it had actual or constructive knowledge that the Clarks presented a danger to the residents of Bingham Court Apartments, and that the trial court erred in allowing information possessed by the assistant manager, Jenny Raffa, to be imputable to appellant. Both contentions are without merit.

(a) The appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known the employee was not suited for the particular employment. *Cherry v. Kelly Svcs.*, 171 Ga. App. 235 at 236 (319 SE2d 463) (1984); *Lear*, supra. Mrs. Clark, in her deposition testimony, admitted that her drug use and Mr. Clark's was common knowledge among the other apartment dwellers. Also, the evidence shows that several of the tenants and employees of Bingham Court knew of the Clark's sexual perversity. Therefore, a sufficient evidentiary basis existed creating a genuine issue of fact as to whether Harvey Freeman had either actual or constructive knowledge of the Clarks' tendencies.

(b) Concerning the contention that the knowledge of the assistant manager cannot be attributable to him, knowledge of an employee's superior concerning practices of that employee is attributable to the corporation. *American Oil Co. v. McCluskey*, 119 Ga. App. 475, (167 SE2d 711) (1969).

As assistant manager, Raffa was required to assume the duties of resident manager if Sandy Clark was unavailable or if the necessity otherwise arose. Because Sandy Clark was responsible for illegal and immoral conduct on the apartment premises, and the evidence shows that Raffa knew of this conduct, Raffa then was required to assume the role of resident manager and rectify the situation. Under these circumstances and *American Oil*, Raffa's knowledge is imputable to the appellant corporation.

3. Appellant claims the trial court erred in failing to determine that appellees' cause of action is barred by the doctrine of assumption of risk as provided by OCGA § 51-11-7: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's *negligence*, he is not entitled to recover." (Emphasis supplied.) That Code section, however, has no bearing in this case, because the injurious acts were intentional sexual assaults, and not

merely negligent acts.

*Judgments affirmed. Birdsong, C. J., McMurray, P. J., Banke, P. J., and Pope, J., concur. Carley, Sognier and Benham, JJ., dissent. Beasley, J., concurs in the judgment only of the dissent.*

CARLEY, Judge, dissenting.

I cannot concur in Division 1, wherein the majority affirms the trial court's denial of appellant's motion for summary judgment on the issue of its liability for the alleged negligent hiring or retention of Mrs. Clark. After reviewing the record, I am convinced that the instant case is controlled by our decision in *Lear Siegler, Inc. v. Stegall*, 184 Ga. App. 27 (360 SE2d 619) (1987). Accordingly, I must respectfully dissent.

"Where a servant departs from the prosecution of his business and commits a tort while acting without the scope of his authority, the person employing him may still be liable if he failed to exercise due care in the selection of his servant." *Renfroe v. Fouche*, 26 Ga. App. 340 (3) (106 SE 303) (1921). However, "[a]n examination of the cases dealing with negligent hiring reveals that in each instance, at the very least the tortious act occurred during the tortfeasor's working hours or the employee was action under color of employment. [Cits.]" *Lear Siegler, Inc. v. Stegall*, supra at 28. The evidence of record in this case shows that Mrs. Clark was employed to work in the leasing office of appellant's apartment complex from the hours of 9 a.m. to 5:30 p.m. It is undisputed, however, that the sexual conduct attributed to Mrs. Clark and her husband did not occur during those scheduled office hours. See *Lear Siegler, Inc. v. Stegall*, supra. Compare *C. K. Security Systems v. Hartford Accident &c. Co.*, 137 Ga. App. 159 (223 SE2d 453) (1976). It is also undisputed that no sexual misconduct ever occurred in the leasing office itself. See *Lear Siegler v. Stegall*, supra. Compare *Slaton v. B & B Gulf Svc. Center*, 178 Ga. App. 701, 702 (2) (344 SE2d 512) (1986).

The majority presumably finds that the conduct occurred during Mrs. Clark's "working hours" or "under color" of her employment merely because she was on 24-hour call as the resident manager. Under this theory, however, the potential direct liability of employers would rest simply upon their hiring or retention of an employee to be on 24-hour call without regard to whether the employee had committed a tort while ostensibly acting in the capacity of a 24-hour on-call employee. Employers would be exposed to potential direct liability for any and all torts which were committed by their 24-hour on-call employee, even if the commission of those torts had no connection whatsoever with the underlying employment and were entirely personal to the employee himself.

That the tort of negligent hiring or retention of an employee does

not extend so far as the majority finds was implicitly but unquestionably decided in *Lear Siegler v. Stegall,* supra. There, the employer had provided the employee with a car. While driving the car to work, the employee collided with another vehicle. This court held: "[B]ut for the fact that he was driving an automobile provided by [his employer], [the employee's] posture at the time of the collision was no different from any other employee driving to work. We decline to extend the parameters of the cause of action for negligent hiring so as to require every business whose employees drive to work to investigate those employees' driving records before hiring, or expose themselves to liability." *Lear Siegler v. Stegall,* supra at 28-29. Likewise in this case, but for the fact that Mrs. Clark was the resident manager of appellant's apartment complex, her status at the time the alleged tortious acts occurred was no different from any other resident of the complex. Mrs. Clark did not use her employment status to gain entry to appellees' apartments to perpetrate any tortious acts. Compare *Southern Bell Tel. &c. Co. v. Sharara,* 167 Ga. App. 665 (1) (307 SE2d 129) (1983). Mrs. Clark did not use her employment status to gain appellees' trust and confidence so as thereby to induce them into participating in the alleged acts. Compare *Edwards v. Robinson-Humphrey Co.,* 164 Ga. App. 876, 879 (3) (298 SE2d 600) (1982). By hiring and retaining Mrs. Clark as the resident manager, appellant exposed appellees to no more potential for being harmed than had appellant accepted and retained Mrs. Clark as a tenant. There is simply no connection between Mrs. Clark's *employment* and the tortious acts she and her husband allegedly committed against appellees.

If appellees have any claim against appellant, it is not in appellant's capacity as the employer of Mrs. Clark, but in appellant's capacity as *the owner* of the apartment complex who failed to exercise ordinary care to protect them from the misconduct of other tenants. See generally *Razdan v. Parzen,* 157 Ga. App. 848 (278 SE2d 687) (1981); *Veterans Organization of Fort Oglethorpe v. Potter,* 111 Ga. App. 201 (141 SE2d 230) (1965); *Georgia Bowling Enterprises v. Robbins,* 103 Ga. App. 286 (119 SE2d 52) (1961). I express no opinion, however, as to whether the respondeat superior counts of appellees' complaints state a cause of action against appellant in its capacity as the owner of the apartment complex or, if so, whether summary judgment was or was not properly granted or denied as to such claims. Appellees have filed no cross-appeals from the grant of appellant's motions for summary judgment as to its liability under the theory of respondeat superior and that issue is not before us. As to the issue that is before us, however, I believe that the trial court erroneously denied appellant's motion for summary judgment as to its direct liability for the alleged negligent hiring or retention of Mrs. Clark as its employee. Accordingly, I respectfully dissent.

I am authorized to state that Judge Sognier joins in this dissent.

BENHAM, Judge, dissenting.

I am compelled by the judicial policy of stare decisis to concur in the conclusion reached in Judge Carley's dissent that summary judgment on the issue of negligent hiring was improperly denied appellants.

This court has previously decided that the employee's tortious conduct must have some connection with the employer's business before the employer will be held liable for negligent hiring of the employee. *Lear Siegler, Inc. v. Stegall*, 184 Ga. App. 27 (360 SE2d 619) (1987). There is no evidence in the case at bar that the employee's alleged tortious acts had any relationship to her duties as appellant's employee. Implicit in the majority opinion is the idea that an employer should be responsible for negligently hiring an employee who is placed by the employer in a position in which there exists a potential for the infliction of harm on others. That theory was expressly rejected by a majority of this court in *Lear Siegler v. Stegall*. See id. (Benham dissent). Stare decisis dictates the conclusion of law which must be reached on this set of facts. See *Norris v. Atlanta & West Point R. Co.*, 254 Ga. 684, 686 (333 SE2d 835) (1985). Since this court has not seen fit to overrule its holding in *Lear Siegler*, and the General Assembly has taken no action, we are bound by the judicial policy "tending to consistency and uniformity of decision. . . ." *Mitchell v. State*, 239 Ga. 3, 6 (235 SE2d 509) (1977).

DECIDED OCTOBER 28, 1988 —
REHEARINGS DENIED NOVEMBER 15, 1988 — 

*R. Chris Irwin & Associates, R. Chris Irwin, Kathleen M. Pacious*, for appellant.

*Calabro, Vogel & Jennette, Michael M. Calabro, James R. Vogel, Larry F. Jennette, Jr., Long, Weinberg, Ansley & Wheeler, Marvin A. Devlin*, for appellees.