984 F.2d 1152
 Deborah HUTCHERSON, As Surviving Spouse of Dennis
Hutcherson, Deceased, Deborah Hutcherson, As Administratrix
of the Estate of Dennis Hutcherson, Deceased, Deborah
Hutcherson, Individually, Plaintiff-Appellant,
v.
PROGRESSIVE CORPORATION, et al., Defendants-Appellees.
 No. 91-9157.
 United States Court of Appeals,
Eleventh Circuit.
 March 3, 1993.
Rehearing and Rehearing En Banc
Denied April 15, 1993.
 
 James E. Butler, Jr., C. Frederick Overby, Peter J. Haughtery, Butler, Wooten, Overby & Cheeley, Columbus, GA, Donald A. Weissman, Donald A. Weissman, P.C., Atlanta, GA, for plaintiff-appellant.
 Thomas S. Carlock, David D. Cookson, Webb, Carlock, Copeland, Semler & Stair, Robert B. Hocutt, Joleen Marie Casey, Nall, Miller, Owens, Hocutt & Howard, Atlanta, GA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before ANDERSON, Circuit Judge, MORGAN and JOHNSON, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 This case arises on appeal following the district court's entry of partial summary judgment in favor of TABS, Inc. ("TABS") and the district court's entry of summary judgment in favor of The Progressive Corporation, National Continental Insurance Company, and Progressive Casualty Insurance Company (collectively, "Progressive"). We affirm in part, reverse in part, and remand.
 
 I. BACKGROUND
 
 2
 On December 29, 1988, TABS' driver Carl E. Hicks was driving a TABS truck south on Interstate Highway 75. Dennis and Deborah Hutcherson were also traveling south on I-75, when Mr. Hutcherson pulled his rig into the emergency lane to check the truck's refrigeration system. Mrs. Hutcherson was asleep in the cab's berth. As Mr. Hutcherson was checking the refrigeration system at the rear of the truck on the driver's side, Hicks swerved out of the right-hand lane, striking and killing Mr. Hutcherson. A police investigation into the accident revealed that Hicks was on amphetamines when the accident occurred.
 
 
 3
 At the time of the accident, Progressive was providing TABS with commercial fleet insurance that included a number of safety services, including periodic independent reviews of TABS' drivers, intended to supplement TABS' internal safety program. As part of its own safety program, TABS required that all new drivers meet certain minimum qualifications, including that each driver be at least twenty-five years of age and have a minimum of two years verifiable over the road tractor-trailer experience. In addition, TABS' hiring procedures required that each applicant submit a three year motor vehicle record ("MVR").
 
 
 4
 When TABS hired Hicks in February 1988, Hicks did not meet TABS' experience requirement. In addition, Hicks' three year MVR revealed that over the last three years Hicks had received four speeding tickets, a citation for operating his truck without proper brake lights, a license suspension for refusing to take an alcohol test and an improper backing citation related to the refusal to submit to an alcohol test, and that Hicks had been involved in a wreck. During the hiring interview, Hicks explained the incident involving his refusal to take the alcohol test. He explained that he had backed into someone resulting in a minor accident, that the police had come to his home later after he had been drinking beer at home, and that this was the reason he refused the test. Unfortunately, the three year MVR only told part of the story. Prior to 1985, Hicks had been arrested and convicted of multiple felonies, including convictions for driving under the influence ("DUI") and assault.
 
 
 5
 In the summer of 1988 Progressive obtained MVRs on Hicks that reflected a more complete picture--including in particular a 1983 DUI conviction. Based on this, Progressive requested that TABS place Hicks on "watch status" for six months. At that time Progressive would order a new MVR and if additional violations were found, Progressive would ask TABS to place Hicks in a non-driving capacity. The accident giving rise to the instant proceeding occurred before the expiration of the six months.
 
 
 6
 On May 21, 1989, Hutcherson's widow filed suit against Hicks, TABS, and Progressive in Georgia state court claiming negligence, wrongful death, pain and suffering, and personal injury. On June 15, 1989, the defendants successfully removed the case to federal district court based on diversity of citizenship. On August 7, 1991, the district court entered partial summary judgment in favor of TABS on the issue of punitive damages on Hutcherson's claim for negligent hiring and retention, and on the claim for negligent entrustment. The court also entered summary judgment in favor of Progressive on Hutcherson's claims under section 324A(b) and (c) of the Restatement (Second) of Torts. On December 2, 1991, the district court entered final judgment on the foregoing claims pursuant to Fed.R.Civ.P. 54(b).II. DISCUSSION
 
 
 7
 This court reviews a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-movant. The court may not weigh evidence to resolve factual disputes--if a genuine issue of material fact is found, summary judgment must be denied. Ryder Int'l Corp. v. First American Nat'l Bank, 943 F.2d 1521, 1523 (11th Cir.1991). Although this is a diversity action and Georgia state law therefore provides the controlling substantive law, federal law governs the sufficiency of the evidence necessary to preclude a grant of summary judgment. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir.1992); Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734, 738 (5th Cir.1980).
 
 A. Punitive Damages
 
 8
 Hutcherson appeals the district court's order granting partial summary judgment to TABS on the issue of an award of punitive damages for either her negligent entrustment claim or her negligent hiring claim. The district court found that although sufficient evidence existed to allow the negligence claims themselves to proceed to trial, no evidence existed to support a finding that TABS had been consciously indifferent.
 
 
 9
 Under Georgia law, "punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." O.C.G.A. § 51-12-5.1 (1992). Georgia defines "conscious indifference" as "an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." Gilman Paper Co. v. James, 235 Ga. 348, 219 S.E.2d 447, 450 (1975). Negligence alone, even gross negligence, will not support an award of punitive damages. Colonial Pipeline Co. v. Brown, 258 Ga. 115, 365 S.E.2d 827, 830, appeal dismissed, 488 U.S. 805, 109 S.Ct. 36, 102 L.Ed.2d 15 (1988).
 
 1. Negligent hiring and retention
 
 10
 To prove negligent hiring, Georgia law requires a plaintiff to show that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent. Sparlin Chiropractic Clinic, P.C. v. Tops Personnel Services, Inc., 193 Ga.App. 181, 387 S.E.2d 411, 412 (1989); Harvey Freeman & Sons, Inc. v. Stanley, 189 Ga.App. 256, 375 S.E.2d 261, 264, aff'd in part, rev'd in part, 259 Ga. 233, 378 S.E.2d 857 (1988). Although custom may be some evidence of ordinary care, "in the last analysis, what ought to be done is fixed according to the standard of the ordinarily prudent man, whether or not it is custom to comply with that standard." Moody v. Southland Investment Corp., 126 Ga.App. 225, 190 S.E.2d 578, 583 (1972).
 
 
 11
 The district court held that Hutcherson failed to demonstrate actions on the part of TABS that rose to the level of conscious indifference, finding that TABS complied with the industry custom when it checked Hicks' driving record for the previous three years, and this compliance, together with TABS' hiring practices, were sufficiently careful to preclude a jury from finding that TABS either wilfully or with conscious indifference hired an incompetent truck driver.
 
 
 12
 As evidence of TABS' conscious indifference, Hutcherson points to TABS' knowledge of the three year MVR and Hicks' failure to meet TABS' two year experience requirement. Hutcherson points out that the three year MVR indicated a poor driving record, and points in particular to the 1987 incident involving an improper backing citation, a refusal to take an alcohol test, and a resulting license suspension. However, it is undisputed that Hicks explained this 1987 incident during the hiring interview in a manner that lulled TABS into discounting the failure to take an alcohol test. We agree with the district court that there is insufficient evidence for a reasonable juror to conclude that TABS' knowledge at the time of hiring constitutes conscious indifference.
 
 
 13
 Hutcherson also claims that TABS was consciously indifferent in retaining Hicks or failing to take him off the road in the summer of 1988, after TABS learned of the 1983 DUI conviction. TABS first learned of the 1983 DUI conviction in the summer of 1988 when Progressive wrote to TABS expressing concern about Hicks, but also noting that the DUI conviction was five years ago and therefore could probably be overlooked. The concern expressed in the letter seemed to focus on the 1987 refusal to take an alcohol test; however, as noted above, that incident had been explained to TABS in the hiring interview. Under these circumstances, we agree with the district court that the evidence is insufficient for a reasonable juror to conclude that TABS was consciously indifferent in retaining Hicks.
 
 2. Negligent Entrustment Claim
 
 14
 With respect to Hutcherson's claim that TABS was consciously indifferent in entrusting the vehicle to Hicks, the evidence is the same as the evidence to support the negligent retention claim discussed above. For the same reasons, we agree with the district court that the evidence is insufficient for a reasonable juror to conclude that TABS was consciously indifferent in this regard.
 
 B. Section 324A Claims
 
 15
 Section 324A of the Restatement (Second) of Torts (the "Restatement") provides the framework for analyzing third party liability under Georgia law. See Huggins v. Aetna Casualty and Surety Co., 245 Ga. 248, 264 S.E.2d 191, 192 (1980) (adopting section 324A of the Restatement). Hutcherson contends that because Progressive provided certain safety services to TABS in conjunction with its insurance coverage, Progressive is liable to her under Section 324A of the Restatement for the wrongful death of her husband.[1]
 
 1. Section 324A(b)
 
 16
 The district court held that to succeed on her claim under section 324A(b), Hutcherson must first show some contractual obligation or agreement on the part of Progressive to undertake the duty of monitoring TABS' drivers, and that duty must be in lieu of, rather than a supplement to, TABS' duty. Because Hutcherson did not put forth any evidence of a contract or agreement, and because Progressive merely supplemented TABS' internal safety program, the district court entered summary judgment in favor of Progressive. On appeal, Hutcherson attacks the district court's holding that liability attaches under section 324A(b) only if Progressive's undertaking of the duty to monitor TABS' drivers was in lieu of, rather than a supplement to, TABS' duty of care.[2] Instead, Hutcherson argues that complete delegation of a duty is not a necessary element in a section 324A(b) claim.
 
 
 17
 Contrary to Hutcherson's assertions, to be liable under section 324A(b), Progressive must completely assume a duty owed by TABS to Hutcherson. Howell v. United States, 932 F.2d 915, 918 (11th Cir.1991) (applying Georgia law). See also Huggins v. Standard Fire Ins. Co., 166 Ga.App. 441, 304 S.E.2d 397, 398 (1983) (section 324A(b) liability attaches only when "the alleged tortfeasor's performance is to be substituted completely for that of the party on whose behalf the undertaking is carried out").[3] Hutcherson can point to no evidence that creates a material issue of fact as to whether Progressive completely assumed TABS' duty to monitor the safety of its drivers. Accordingly, the district court correctly entered summary judgment for Progressive on Hutcherson's section 324A(b) claim.
 
 2. Section 324A(c)
 
 18
 Hutcherson claims that the lower court erred by entering summary judgment in favor of Progressive on her section 324A(c) claim. To establish liability based on section 324A(c), Hutcherson must demonstrate that her injuries were suffered because of TABS' reliance on the safety inspections undertaken by Progressive. Universal Underwriters Ins. Co. v. Smith, 253 Ga. 588, 322 S.E.2d 269, 272 (1984); Smith v. Universal Underwriters Ins. Co., 752 F.2d 1535, 1537-38 (11th Cir.1985) (per curiam); Bussey v. Travelers Ins. Co., 643 F.2d 1075, 1077 (5th Cir. Unit B April 1981) (per curiam). Georgia law requires that reliance be shown by a change in position. Phillips v. Liberty Mutual Insurance Co., 813 F.2d 1173, 1175 (11th Cir.1987) (citations omitted). Thus, Hutcherson must show that TABS changed its position by neglecting or reducing its own safety program because of Progressive's efforts. See Bussey, supra, 643 F.2d at 1077-78.
 
 
 19
 Progressive offered direct evidence below that TABS did not reduce or eliminate any of its duties relating to the monitoring of its drivers. Relying on this evidence, the district court entered summary judgment in favor of Progressive. In reaching its determination, however, the district court discounted evidence put forth by Hutcherson that TABS had reduced its own safety program in reliance on Progressive's safety services. This was error. As we noted in Phillips, supra, 813 F.2d at 1175, reliance may be proven by circumstantial evidence.
 
 
 20
 Our careful review of this summary judgment record persuades us that a jury might reasonably infer that TABS did reduce its safety activities in reliance upon Progressive. The jury could reasonably infer that TABS itself would have more closely monitored its drivers absent the substantial monitoring which was provided by Progressive. The director of safety for TABS testified that TABS did depend upon Progressive with respect to monitoring drivers. When Progressive's investigation in the summer of 1988 uncovered driving offenses by Hicks of which TABS was not previously aware, and reported to TABS that Hicks was questionable and on "watch status," the record is subject to a reasonable inference that TABS did not itself investigate and evaluate the matter as common sense would indicate, but rather relied upon Progressive's apparent determination that "watch status" was sufficient. Finally, a former Progressive manager stated that it was in Progressive's economic interest to provide services to TABS to the extent that TABS would be induced to rely upon the services in lieu of conducting its own activities. Considering the totality of the evidence, we conclude that a reasonable jury could find that TABS did permit the safety services provided by Progressive to supplant safety activities that TABS would otherwise have conducted. See Phillips, supra, 813 F.2d at 1175. Because a material issue of fact exists, the district court's entry of summary judgment in favor of Progressive under § 324A(c) is reversed.
 
 III. CONCLUSION
 
 21
 For all of the foregoing reasons, we AFFIRM the district court's entry of partial summary judgment in favor of TABS regarding punitive damages for negligent hiring and entrustment, as well as the district court's entry of summary judgment in favor of Progressive on Hutcherson's section 324A(b) claims. We REVERSE the district court's entry of summary judgment in favor of Progressive on Hutcherson's section 324A(c) claims.
 
 
 22
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 23
 MORGAN, Senior Circuit Judge, concurring in part and dissenting in part:
 
 
 24
 I concur in the judgment of the majority with one exception. With respect to the § 324A(c) claim against Progressive, I must respectfully dissent. Under Georgia law, TABS' reliance on Progressive's safety activities must be shown by a change of position on the part of TABS. Phillips v. Liberty Mut. Ins. Co., 813 F.2d 1173, 1175 (11th Cir.1987). In the face of a properly supported motion for summary judgment, the non-movant cannot get to a jury without "any significant probative evidence tending to support the complaint." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, in order to survive a motion for summary judgment, Hutcherson must present sufficient evidence to allow a reasonable jury to conclude that TABS changed its position by neglecting or reducing its own safety program in reliance on Progressive's efforts. In my judgment, Hutcherson has failed to make a showing sufficient to defeat Progressive's motion for summary judgment.
 
 
 25
 The majority relies on three pieces of circumstantial evidence in support of their decision. The majority makes reference to the deposition testimony of TABS' former safety director that "TABS depended on Progressive to help TABS screen and monitor drivers."[1] The key issue is whether this supports a reasonable inference that TABS neglected or reduced its own safety activities because it "depended on Progressive to help" screen and monitor its drivers. The deposition testimony, taken in context, shows the safety director's hesitancy to say that Progressive helped TABS monitor its drivers, and it makes clear that Progressive's review was independent of TABS own monitoring. The direct evidence shows that, at the time TABS applied to Progressive for coverage, it already had in place a safety program involving the monitoring of drivers which was a carry-over from the president's former trucking company. There is also direct evidence that TABS did not neglect or reduce any of its safety activities as a result of Progressive's activities and that the original (pre-Progressive) safety program remained intact. It seems clear that Progressive's help was above and beyond what TABS felt was necessary, and although TABS appreciated that help, there is no evidence which supports the inference that, without Progressive's help, TABS would have more closely monitored its drivers.
 
 
 26
 Second, the majority erroneously states that "Progressive's investigation in the summer of 1988 uncovered driving offenses by Hicks of which TABS was not previously aware", and then concludes that this evidence is "subject to a reasonable inference that TABS did not itself investigate and evaluate the matter as common sense would indicate, but rather relied upon Progressive's apparent determination that 'watch status' was sufficient." Contrary to the majority's assertion, TABS was aware of the offenses contained in Hicks' MVR when Progressive requested, on July 11, 1988, that Hicks be placed on "watch status". On May 6, 1988, Lisa Bankston of the Lockton Insurance Agency wrote the safety director of TABS and indicated that Hicks was "pretty questionable". Attached to the letter was a copy of Hicks' MVR as of May 5, 1988. The only new information contained in the MVR was a five year old DUI from 1983 which Ms. Bankston opined could be "overlooked" due to the elapsed time. TABS already had information on the other offenses, including the refusal to submit to an alcohol test which TABS had investigated during Hicks' initial hiring interview. Although TABS apparently did not investigate the five-year old DUI, it is clear that TABS did investigate the more recent refusal to take an alcohol test. The record does not support a reasonable inference that TABS should have investigated the 1983 DUI, particularly in light of the fact that it occurred five years previously and Hicks had been working with TABS for four months without any problems. Furthermore, TABS was aware of the 1983 DUI two months before Progressive placed Hicks on 'watch status'. In my opinion, it is unreasonable to infer that TABS' inaction during this two month period was in reliance on Progressive's determinations which had not yet been made.
 
 
 27
 Finally, the majority makes reference to the affidavit of Mr. Kerney, a former Progressive manager, that states it was in Progressive's economic interest to provide services to TABS in order to induce reliance. This affidavit was properly disregarded by the district court as having no probative value. There is no evidence that Mr. Kerney had any personal knowledge as to whether TABS did or did not reduce or neglect its own safety activities or even any knowledge of TABS' dealings with Progressive or of TABS' practices or policies. The affidavit relates solely to Progressive's conduct and to Progressive's economic motivation. This affidavit does not state that Progressive actually tried to induce reliance by TABS, nor, more importantly, whether TABS actually did rely on Progressive. Any inferences as to TABS' reliance drawn from this affidavit are purely speculative and would not support a reasonable jury's verdict against Progressive.
 
 
 28
 For the foregoing reasons, it is my opinion that the district court's grant of summary judgment in favor of Progressive on the § 324A(c) claim should be affirmed.
 
 
 
 [1]
 Section 324A provides:
 One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if:
 (a) his failure to exercise reasonable care increases the risk of such harm; or
 (b) he has undertaken to perform a duty owed by the other to the third person; or
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 Restatement (Second) of Torts § 324A (1965).
 
 
 [2]
 Hutcherson also contends that the district court erred in requiring that she put forth evidence of a contract or agreement, citing Sims v. American Casualty Co., 131 Ga.App. 461, 206 S.E.2d 121, 130 aff'd, 232 Ga. 787, 209 S.E.2d 61 (1974), for the proposition that a legal duty may arise from a course of conduct which is independent of a contract or express agreement. Because we find that Hutcherson has failed to show that Progressive completely assumed TABS' duty to monitor its drivers, we do not need to reach this issue
 
 
 [3]
 Hutcherson argues that complete delegation of all duties is not required, so long as TABS completely delegated some duty to Progressive that TABS owed Hutcherson and Progressive breached that duty. See Canipe v. National Loss Control Service Corp., 736 F.2d 1055, 1063 (5th Cir.1984), cert. denied, 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 969 (1985). Even if Hutcherson is correct, Hutcherson has not offered any evidence that Progressive completely assumed a duty owed her by TABS
 
 
 [1]
 The relevant portions of Mr. Childers' deposition are as follows:
 Q: Alright. Didn't NCI monitor the driving records of TABS drivers?
 A: Yes.
 Q: As a matter of fact, TABS, to some extent, relied upon NCI to help them out in that regard?
 A: To help them out? I don't--
 Q: To help out. To--help monitor driver records.
 A: They did. But as far as helping us, I'm not--(pause)
 Q: Well, the purpose of--
 A: Because the--yes. And they--if there was a question about the drivers, they sent me the--the MVR and asked me to explain.
 (Childers' Depo., p. 65)
 Q: Alright. Didn't NCI review individual driver files?
 A: That was independent, yes. They required that I send them driver's files and they pulled up--or driver's names and license numbers, not the file--
 Q: Uh-huh.
 A: --but--and they would pull up an independent MVR on that driver.
 Q: They would check out the driver's background?
 A: Yes.
 Q: And, of course, that helped you in your work--
 A: Yes.
 (Childers Depo., p. 66-67)
 Q: Okay. If NCI had told you and TABS, Inc. to put Hicks in a nondriving capacity, would you have done that?
 A: Yes.
 Q: And since NCI was doing their own independent examination of driver records and were reviewing driver files themselves as you all sent them to NCI, is it fair to say that you all were depending on NCI to help TABS, Inc. to screen and monitor drivers?
 A: Yes.
 (Childers Depo., p. 68)