## 64480. EDWARDS v. ROBINSON-HUMPHREY COMPANY, INC.

CARLEY, Judge.

Appellant brought this action against appellee, Robinson-Humphrey Company, Inc. seeking damages she allegedly sustained as a result of the conduct of David Quinn who was an employee of appellee. Appellant relied upon the doctrine of respondeat superior with respect to acts of Quinn committed within the scope of his employment and upon appellee's alleged negligence

in hiring with respect to acts committed outside the scope of Quinn's employment. After extensive discovery, appellee filed a motion for summary judgment. Concluding that the defense of ratification was meritorious, the trial court granted appellee's motion for summary judgment and appellant appeals.

In order to resolve the issues in this case, a recitation of the relevant facts is necessary: David Quinn was employed by appellee in 1976 as a registered representative. Before Quinn was hired by appellee, he was required to complete numerous application forms. In addition, a thorough investigation of his background was made by an independent organization, and inquiries were directed to his past employer. It is undisputed that Quinn's applications contained misrepresentations and inconsistencies concerning his personal and professional histories. However, the applications and investigations revealed absolutely no evidence of a violent or criminal background.

The evidence, construed most strongly in favor of appellant, further shows that in January of 1977, Quinn, by threats of violence, coerced appellant into purchasing, through appellee, 250 units of a tax-free bond trust for their fair market value of $264,377.50. In addition, the following day, Quinn stole several paintings from appellant's art collection. Appellant fully cooperated with authorities in their investigation of Quinn, and was instrumental in securing Quinn's indictment for the theft of her paintings which were returned to her. However, at this point, appellant did not inform appellee of Quinn's threats, and in fact took delivery of the Bond Unit Certificate on February 22, 1977, the same day Quinn was indicted for theft. On March 1, 1977, when appellee learned of Quinn's indictment, Quinn was suspended from the duties of his employment. Three days later, appellant had the bond units returned to appellee to have them re-registered in appellant's full name, including her middle initial. In April of 1977, Quinn was convicted of theft. It was not until May of 1977 that appellee first learned that appellant had some concerns over her original purchase of the securities. At that time, appellee contacted appellant's attorney and offered to cancel the purchase and return the full purchase price. Although appellant's attorney stated that he would "get back to" appellee, there was no further communication in this regard. Appellant retained the securities without complaint to appellee until approximately October of 1979, some 33 months after appellant was allegedly coerced into their purchase by Quinn. Appellant decided to sell the units because they "were not a good investment at that time and [she] could get more interest on [her] money." At the time of the sale — which was 29 months after appellee offered to repurchase the securities — the fair market value of the

bond units had decreased and appellant sold the bond units at a loss of approximately $35,000. However, during the more than two and one-half years appellant held the securities without voicing any objection to appellee, she received more than $40,000 in tax free income. In December of 1980, almost four years after the coerced purchase of the securities and the theft of the paintings, appellant instituted the instant action against appellee.

1. Any claim appellant may have had in respondeat superior for personal injuries (such as for the torts of assault, trespass, infliction of emotional distress, or invasion of privacy) is barred by Georgia's two year statute of limitations. Code Ann. § 3-1004.

2. With respect to appellant's respondeat superior claim for damages to property, appellant asserts that the trial court erred in granting summary judgment to appellee based upon appellee's defense of ratification. In support of her respondeat superior claim, appellant emphasizes that she is not attempting to rescind the purchase of the securities to which the defense of ratification may apply. Instead, appellant asserts that her claim is in tort because she has affirmed the contract and is suing for damages based on Quinn's duress. Appellee contends that her damage is the loss incurred when she finally sold the bond units along with the amount of interest she could have earned with the money had she not been forced to purchase the bonds.

It is clear that "where a vendee is induced to enter into a contract for the sale of personalty by the fraud of the vendor . . . he has an election of remedies. One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud." *Tuttle v. Stovall,* 134 Ga. 325, 328 (67 SE 806) (1910). Although Quinn's alleged actions did not constitute "fraudulent misrepresentations" about the bond units but were in the form of threats of violence, it is clear that " '[d]uress is considered as a species of fraud in which compulsion in some form takes the place of deception in accomplishing an injury, and, like fraud, constitutes a meritorious ground to set aside a contract executed as a result thereof. [Cits.]' " *Tidwell v. Critz,* 248 Ga. 201, 203 (282 SE2d 104) (1981). It follows that duress also constitutes a meritorious basis upon which to affirm a contract executed as a result thereof and sue for damages for the duress. Thus, after the "forced" purchase, appellant could have elected either to rescind the contract, or to affirm the contract and, based upon respondeat superior, sue appellee for damages arising out of Quinn's duress.

However, although a defrauded party "may affirm the contract and sue for damages for the fraud, this right of affirmance, with a saving of the right to sue for damages, has its limitations, in that the

defrauded party, in order to preserve his right to sue for damages for the fraud, *must do no act in affirming the contract,* or *otherwise, which waives the fraud.* If the defrauded party, with knowledge of the fraud, does an act in *ratifying* or *affirming the contract which shows his intention to abide by the contract as made,* with the fraud in it, and thus *waives the fraud, he can not afterwards set up the fraud and recover damages therefor." Tuttle v. Stovall,* 134 Ga. at 329, supra. (Emphasis supplied.) Thus, even though appellant's respondeat superior claim seeks *not* to rescind the contract, but to affirm the contract and sue for damages, the defenses of ratification and waiver are viable ones.

Based upon the undisputed evidence in the instant case, we find that appellant's ratification of the contract and waiver of the duress is shown as a matter of law. Appellant accepted every interest payment for the thirty-three months that she held the bond units. She made no attempt to even inform appellee of Quinn's threats or to complain that they were the cause of her purchase. Furthermore, appellant, after Quinn's indictment for theft, returned the bond units to appellee to have her middle initial added. Most importantly, when appellee offered to cancel the purchase of the bonds and return the full purchase price, appellant did not do so. While appellant testified that she kept the bonds due to Quinn's threats, the record shows that she was not so coerced or under such duress as to be unable to testify at Quinn's trial. In fact, appellant stated that she only decided to sell the bond units as "they were not a good investment at the time." We therefore hold that "[b]y [appellant's] conduct in thus dealing with the opposite party she recognized the contract as one that was valid and enforceable against her in its entirety." *Tuttle v. Stovall,* 134 Ga. at 332, supra. The evidence of appellant's actions demonstrates, as a matter of law, that appellant intended to abide by the contract as made notwithstanding Quinn's duress.

Appellant's claim in respondeat superior for "injuries to property," namely the "loss of funds," inescapably and necessarily is encompassed by the tort of duress since appellant is claiming all loss to her was directly caused by the threats of Quinn. Therefore, appellant's claim for "injuries to property" must necessarily be considered to be one and the same as appellant's claim to affirm the contract and sue for damages for the duress. Appellant's respondeat superior claim for the loss incurred on the bond units is without merit. Compare *Touche, Inc. v. Dearborn,* 161 Ga. App. 188 (3) (291 SE2d 35) (1982); *Atlanta Car Wash v. Schwab,* 215 Ga. 319 (2) (110 SE2d 341) (1959).

3. Appellant also asserts that genuine issues of material fact remain with regard to appellant's claim that appellee was itself

negligent in hiring Quinn and that, therefore, the trial court erred in granting appellee's motion for summary judgment.

While there were inaccuracies and misstatements in Quinn's applications concerning his private and professional history, it is undisputed that the applications and investigations contained absolutely no evidence of a violent or criminal background. While the evidence might show that Quinn had a propensity for lying and that appellee knew or should have known of this propensity, it is not appellee's negligence in hiring and retaining a liar as an employee that underlies appellant's claim. Appellant's claim of negligence against appellee is based upon Quinn's tortious acts of violence and his criminal acts of theft of appellant's art work. For appellee to be negligent in hiring and retaining an employee with violent and criminal propensities, it would be necessary that appellee knew or should have known of those dangerous propensities alleged to have resulted in appellant's injuries. See generally *Henderson v. Nolting First Mtg. Corp.,* 184 Ga. 724, 733 (2) (193 SE 347) (1937); *C. K. Sec. Systems v. Hartford Acc. &c. Co.,* 137 Ga. App. 159 (223 SE2d 453) (1976); *Cunningham v. Hodges,* 150 Ga. App. 827, 830 (258 SE2d 631) (1979).

The record contains absolutely no evidence which would authorize a finding that appellee knew or should have known that Quinn was violently or criminally prone. " 'In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act.' " *Southern R. Co. v. Webb,* 116 Ga. 152, 156 (42 SE 395) (1902). To hold, as appellant argues, that a master may be found liable for the negligent employment of a servant who subsequently commits tortious and criminal acts solely because the employer knew or should have known that the servant had originally lied about his personal and professional qualifications for the position, would be tantamount to holding that there is no longer any proximate causation requirement in negligent employment actions in this state.

Appellant's argument that appellee would not have hired Quinn had it known or discovered his lies does not demonstrate that the negligence, if any, in hiring a liar was the proximate cause of appellant's injuries resulting from Quinn's tortious and criminal acts. This evidence would support only a finding that because of appellee's failure to discover that Quinn was a liar, Quinn was hired to a position of trust where he was afforded the opportunity to coerce appellant into buying the securities and, presumably, to gain felonious access to her art collection. See *General Motors Corp. v. Davis,* 141 Ga. App.

495, 496 (1) (233 SE2d 825) (1977). In the instant case, there is no evidence that Quinn's subsequent tortious and criminal actions against appellant " 'could reasonably have been anticipated, apprehended, or foreseen'" by appellee, *Medlin v. Bickford,* 106 Ga. App. 859, 861 (128 SE2d 531) (1962), as a "probable or natural consequence" of hiring him. *Southern R. Co. v. Webb,* 116 Ga. at 156, supra. Therefore, the mere fact that Quinn, as a liar, had been negligently employed and was employer's employee at the time appellant's claims arose would not constitute the proximate cause of appellant's damages. See generally *Skelton v. Gambrell,* 80 Ga. App. 880 (57 SE2d 694) (1950). Therefore, summary judgment was not erroneously granted to appellee as to appellant's negligent hiring claims.

*Judgment affirmed. Quillian, C. J., Deen, P. J., Sognier and Pope, JJ., concur. McMurray, P. J., Shulman, P. J., Banke and Birdsong, JJ., dissent.*

DECIDED DECEMBER 3, 1982 —
REHEARING DENIED DECEMBER 20, 1982.

*Andrew R. Kirschner,* for appellant.
*Gregg J. Borri, A. Felton Jenkins, Jr.,* for appellee.

SHULMAN, Presiding Judge, dissenting.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law . . ." Code Ann. § 81A-156 (c) (OCGA § 9-11-56 (c)). Because I believe there to be genuine issues of material fact in this case, I must dissent from the majority opinion which affirms the grant of summary judgment to appellee.

Before delving into the legal questions which separate me from the majority, I must present a more complete factual picture with regard to the majority's statement that appellant failed to take advantage of appellee's May 1977 offer to cancel the bond purchase. The only testimony with regard to the alleged offer to cancel the bond purchase is appellant's emphatic denial of any knowledge of such an offer, and her statement that the attorney allegedly representing her at the time was not authorized to communicate with appellee on her behalf.

1. Appellant's cause of action based on respondeat superior concerns a purchase of securities she made in 1977 through Quinn who was a stockbroker employed by appellee. In her deposition, appellant stated that Quinn's threats of physical violence against her

family caused her to purchase $264,337.50 worth of tax-free securities through Quinn and appellee. Appellant kept the securities and received monthly interest checks thereon until the sale of the bonds became an economic necessity in late 1979, some three years after the allegedly coerced purchase. Both appellant and her son testified that appellant retained the securities due to continuing threats from Quinn and anonymous telephone callers. Appellant stated in her deposition that she presently feared that she had made a mistake in selling the securities. Through her lawsuit against appellee, appellant sought to recoup personalty losses she allegedly suffered as a result of torts committed by Quinn to force appellant to purchase the securities.

The trial court based its grant of appellee's motion for summary judgment on this issue on the conclusion that appellant had ratified the contract. The majority adopts this reasoning, asserting that, while appellant purchased the bonds under duress, her retention of the securities and her acceptance of the monthly income therefrom act as a waiver of any claim of duress and constitute a ratification of the bond purchase. I cannot agree.

Under Code Ann. § 20-503 (OCGA § 13-5-6), duress will render a contract voidable at the instance of the injured party. However, appellant insists, and her pleadings bear her out, that she is not attempting to void the purchase contract. Instead, her lawsuit sounds in tort and seeks damages to personalty. She is, as the majority recognizes, affirming the contract and suing appellee for damages. I believe, however, that the facts of the case reveal that summary judgment based on ratification is inappropriate. Ratification of a contract executed under duress occurs when contractual benefits are accepted and retained *subsequent* to the removal of the duress and a showing is made that the party intended to ratify the contract. *Tidwell v. Critz,* 248 Ga. 201 (282 SE2d 104). Appellant's testimony that she kept the bonds for as long as she did due to threatening telephone calls and her fear for the safety of her family raises a question as to whether the duress under which appellant agreed to the purchase was ever removed. Consequently, summary judgment based on ratification was inappropriate.

Appellee asserts that it is absolved from liability because the means by which Quinn sold the securities to appellant were beyond the scope of his employment and not authorized by appellee. Such declarations on appellant's part do not absolve it of potential liability.

"In determining the liability of the master for the negligent or willful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was

done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. [Cits.]" *Jones v. Reserve Ins. Co.,* 149 Ga. App. 176, 177 (253 SE2d 849). "While it is, of course, true that the master rarely commands the servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort, if the acts under consideration are done in the prosecution of the master's business, liability will ordinarily attach to the master . . . [S]o long as the servant is acting within the scope of his employment, the owner is liable, though the negligent act was not necessary to the performance of his duties, or though it was not expressly authorized or known to the employer, or was contrary to his instructions." *Evans v. Caldwell,* 52 Ga. App. 475, 477 (184 SE 440).

It cannot seriously be asserted that Quinn's actions were entirely disconnected from his master's business. Compare *Daniel v Excelsior Auto Co.,* 31 Ga. App. 621 (121 SE 692). Nor can it be said that Quinn's acts arose out of a personal quarrel he had with appellant. Compare *Ga. Power Co. v. Shipp,* 195 Ga. 446 (24 SE2d 764); *Jones v. Reserve Ins. Co.,* supra. Quinn was employed by appellee to sell securities and he allegedly accomplished that goal by threatening bodily harm to appellant's family.

2. The basis of the remaining counts in appellant's complaint is that appellee was negligent in hiring Quinn. Code Ann. § 66-301 (OCGA § 34-7-20) requires an employer "to exercise ordinary care in the selection of servants . . ." "The selection of incompetent servants is such an act of negligence as will authorize a cause of action in favor of any person who is injured as the direct and proximate result thereof. [Cits.]" *Elrod v. Ogles,* 78 Ga. App. 376 (2b) (50 SE2d 791). "Where a servant departs from the prosecution of his business and commits a tort while acting without the scope of his authority, the person employing him may still be liable if he failed to exercise due care in the selection of his servant." *Renfroe v. Fouche,* 26 Ga. App. 340 (3) (106 SE 303).

Appellee maintains that it exercised due care in the selection of Quinn as an employee and thus cannot be held responsible for acts committed outside the scope of his employment (e.g., the theft of artwork from appellant, for which Quinn was subsequently convicted). Appellee contends that its investigation of Quinn (consisting of a background report from Equifax Services, Inc.; a telephone call to Quinn's former employer; a "customary investigation" by the New York Stock Exchange) uncovered no evidence of past criminal acts or violent conduct on the part of Quinn. Therefore, appellee reasons, it cannot be held responsible for Quinn's acts outside the scope of his employment.

I agree with the majority that there is no evidence of a criminal history in Quinn's past. However, appellee's investigation of its employee was not as thorough as it could have and should have been. I point out with particularity appellee's abysmal failure to note discrepancies between Quinn's oral representations and his answers to questions on various application forms completed for appellee, and the background report appellee received on Quinn from Equifax Services, Inc. A comparison of the forms and report reveals inconsistencies with regard to Quinn's education, previous employment, previous residences, net worth, health, and reasons for leaving his immediate past employment. All of the material was in the possession of appellee, but the inconsistencies, if ever noted, were never brought to the attention of anyone in appellee's hiring hierarchy. Such an oversight is particularly damning in light of testimony from the vice-chairman of the board of appellee to the effect that appellee would not hire anyone who had lied on the employment application.

Appellee cannot summarily avoid responsibility for its act of hiring Quinn to "a position of trust" by relying exclusively on reports from outside sources when it had in its possession contradictory material from the employment applicant himself. This is especially true in a situation where the potential employer is on record as having taken the position that no one who lied on an application form would be hired by the company. How would a liar be ferreted out without comparing and contrasting the various items of information on the application that the employer obtained? Only appellee was in a position to compare information received from Quinn and information received from outside sources, and it failed to do so. Furthermore, it may be that appellee, in hiring someone to fill what appellee's general sales manager described as a "position of trust," was required to exercise "a greater *amount* of care to meet the *degree* or standard of care required by law." *C. K. Sec. Systems v. Hartford Acc. &c. Co.,* 137 Ga. App. 159, 161 (223 SE2d 453).

3. As in any negligence case, the plaintiff in a "negligence in hiring" lawsuit must show proximate causation in order to prevail. The majority concludes that appellee's negligent employment of Quinn "would not constitute the proximate cause of appellant's damages." I disagree. Whether appellant can prove that appellee's failure to look at all the information it had gathered on Quinn and its subsequent hiring of Quinn as a stockbroker was the proximate cause of the loss appellant suffered as a result of Quinn's theft of her artwork is not a question this court can answer. That is a matter for a jury, and we should not intrude upon that body's duty. I would

reverse the grant of summary judgment to appellee.