## 65968. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY v. SHARARA.

CARLEY, Judge.

Lambert Priest was employed as an installer-repairman by defendant-appellant, Southern Bell Telephone & Telegraph Company ("Southern Bell"), for eleven and one-half years. On October 15, 1980, priest installed a business phone in the residence of plaintiff-appellee. After completing installation of the phone, Priest physically attacked appellee. Priest was subsequently charged with and pled guilty to the crime of aggravated assault. Appellee brought the instant action against both Priest and Southern Bell, seeking a recovery against the latter under theories of respondeat superior and negligence in the hiring or retaining Priest as an employee. Pursuant to a grant of a petition for interlocutory review, appellant Southern Bell appeals from the denial of its motion for summary judgment.

1. Appellant contends that, as a matter of law, it cannot be held

liable for the negligent hiring or retention of Priest as an employee, there being absolutely no evidence that appellant knew or should have known of Priest's criminal or violent propensities. The evidence is uncontroverted that Priest had never been convicted of any crime except minor traffic violations. Priest was required by appellant to complete an employment application in which he was to disclose all criminal offenses, and which was then confirmed for accuracy and truthfulness by appellant's security department. During the eleven and one-half years of his employment with appellant, no complaints were lodged by customers against Priest, and periodic evaluations of him by appellant indicated his work was more than satisfactory. In fact, Priest had been commended by several customers for his work.

"For [appellant] to be negligent in hiring and retaining any employee with violent and criminal propensities, it would be necessary that [appellant] knew or should have known of those dangerous propensities alleged to have resulted in [appellee's] injuries. [Cits.] The record contains absolutely no evidence which would authorize a finding that appellee knew or should have known that [Priest] was violently or criminally prone." *Edwards v. Robinson-Humphrey Co.,* 164 Ga. App. 876, 880 (298 SE2d 600) (1982). Appellee asserts that appellant knew or should have known that Priest was having marital difficulties and therefore could be held liable for negligent employment. "To hold, as [appellee] argues, that a master may be found liable for the negligent employment of a servant who subsequently commits tortious and criminal acts solely because the employer knew or should have known that the servant [was having marital problems] would be tantamount to holding that there is no longer any proximate causation requirement in negligent employment actions in this state." *Edwards v. Robinson-Humphrey Co.,* supra at 880.

Appellee further asserts that, although appellant had no actual knowledge of Priest's dangerous propensities, appellant would have had such knowledge if Priest had been required to submit to periodic interviews or psychological tests designed to reveal his aggressive, hostile and violent propensities. We have found no statute or court decision which would authorize the establishment of a blanket requirement that an employer submit all of its employees to a series of periodic psychological tests or interviews to determine whether any employee has developed or is developing negative or antisocial propensities. Where, as in the instant case, an employee has absolutely no background of prior criminal or dangerous propensities and, during his employment for a substantial number of years, he has had a good work record without a single complaint from customers, his employer may not be found negligent in hiring and retaining such

employee because of a failure to require such employee to submit to psychological testing or interviews.

In the case at bar, there is absolutely no evidence that appellant failed to exercise ordinary care in the selection and retention of Priest. OCGA § 34-7-20 (Code Ann. § 66-301). Contrary to appellee's assertions, *C. K. Security Systems v. Hartford Acc. & Indem. Co.,* 137 Ga. App. 159, 161 (223 SE2d 453) (1976) does not support the conclusion that the circumstances of the employment were such that a greater *amount* of care in the selection and retention of Priest was required from appellant in order to meet the *standard* of care required by law. In *C. K. Security Systems,* supra, unlike the instant case, the very purpose of the service provided by the defendant was the protection of persons and property. Appellant was entitled to summary judgment on the issue of negligent hiring or retention of Priest.

2. Appellant also asserts that it cannot be held liable for Priest's actions on a theory of respondeat superior because there exists no genuine issue of material fact as to whether Priest's assault on appellee was in any way connected with his employment.

OCGA § 51-2-2 (Code Ann. § 105-108) provides in part: "Every person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." This court has repeatedly held that " '[i]n determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment.' " *McGhee v. Kingman & Everett Inc.,* 49 Ga. App. 767 (2) (176 SE 55) (1934); See also *Colonial Stores v. Sasser,* 79 Ga. App. 604 (54 SE2d 719) (1949); *Jones v. Reserve Ins. Co.,* 149 Ga. App. 176 (253 SE2d 849) (1979).

In the instant case the evidence is clear that Priest was not acting "within the scope of or in the prosecution of the business of appellee at the time of the incident on which this action [was] based." *Jones v. Reserve Ins. Co.,* supra at 177. Priest submitted an affidavit to the effect that his acts were unrelated to the task of installing the phone and were completely personal in nature. See *Community Theatres Co. v. Bentley,* 88 Ga. App. 303 (76 SE2d 632) (1953); *Sparks v. Buffalo Cab Co.,* 113 Ga. App. 528, 530 (148 SE2d 919) (1966). Compare *Miller v. Honea,* 163 Ga. App. 421 (294 SE2d 629) (1982). The mere fact that the assault occurred during a time of ostensible employment in the appellee's home is not dispositive on the question of scope of employment. *Stafford v. Postal*

*Telegraph-Cable,* 58 Ga. App. 213 (198 SE 117) (1938). No genuine issue of material fact remains as to appellee's claim based upon a theory of respondeat superior, and appellant is also entitled to judgment on this issue as a matter of law.

3. Appellee also contends that appellant should be responsible for Priest's acts even if they were outside the scope of his employment. Appellee makes such an argument by attempting to analogize the responsibility that a public utility, such as appellant, owes to its customers, to the responsibility owed by a common carrier for the wrongful acts of its employees committed against a passenger.

We note at the onset that OCGA § 46-9-132 (Code Ann. § 18-204) provides that a common carrier must exercise *extraordinary* diligence to protect the lives and persons of its passengers, but there is no such extraordinary duty of care imposed by law on a public telephone company. Thus appellant was required to exercise only ordinary care in the hiring and retention of its employees. In the absence of statutory authority, appellant, in providing services as a public utility, cannot be held to the same standard of care in connection with the determination of liability for acts of its employees as is imposed by legislation on a common carrier for wrongful acts committed by its employees against its passengers.

4. No genuine issue of fact remained in the instant case and appellant was entitled to summary judgment.

*Judgment reversed. Deen, P. J., and Banke, J., concur. Deen, P. J., also concurs specially.*

DECIDED JULY 15, 1983 —
REHEARING DENIED JULY 29, 1983 — 

*George B. Haley, Jr., Charles M. Dalziel, Jr.,* for appellant.
*Stephen L. Goldner, Hugh H. Lowery,* for appellee.

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion, it might be added the better practice, in cases as here, would be for installer-repairman employees who are required to enter into homes of customers be more closely checked, observed, screened and interviewed by employers as to any outward manifestation of dangerous propensities relating to aggression or violence. We know of no requirement of compulsory psychological periodic blanket testing and counseling of all of one's employees. In fact, were this to be done by employers, without the employees' consent, serious First Amendment individual rights of privacy and other employee

constitutional and civil rights[1] might be at issue.

Even an owner of a dog is not liable for an injury to another unless knowledge of prior propensities or a penchant to bite or attack by the dog exists. See *Turner v. Irvin,* 146 Ga. App. 218 (246 SE2d 127) (1978). The same type theory or a form of negligent entrustment obtains here with respect to hiring or retaining an employee without any prior knowledge of overaggressiveness, violent or criminal propensities or tendencies. Unless there exists present knowledge by the employer (owner) of prior propensities, aggression and violence (to bite), there can be no liability.

In psychological interviews seeking to pinpoint the origin and sources of negative, antisocial, violent propensities of aggression[2] of humans, most alleged experts usually concentrate in only two areas: *Nature* (instinctivism — heredity — innateness) or *Nurture* (behaviorism — environment — society). While nature-nurture-norms may well influence what happens to us, the criminal law of Georgia, OCGA § 16-2-4 (Code Ann. § 26-603), recognizes a third area it considers of prime importance, that is, a consideration of and the presumption of voluntary free will and the resulting responsibility of paying the penalty for our wrongful criminal acts committed. Many times psychological testing by alleged experts obscures and ignores any reference to the latter area since the voluntary free will of humans is considered and thought by many as unpredictable and, therefore, empirically unscientific. The law presumes, on the other hand, that all humans know right from wrong, as to their acts committed; therefore, the latter area of voluntary will under our criminal code needs to be again emphasized, that the actor is to blame, in all psychological counseling as to aggression, and the former two nature-nurture-norms need to be deemphasized, as they suggest someone else is to blame other than the actor. Concentrating only on nature and nurture norms in psychological testing is counter productive to encouraging all citizens in upholding restrictions that certain conduct is wrong as set forth in

---

[1] 20 USCA § 1232h, prohibits required psychological testing of students without written parental consent where the primary purpose seeks to reveal family political, economic, sexual, mental and other privileged information; and see "Manipulation and the New Elite," *How Should We Then Live?,* Francis A. Schaeffer, 1976, Fleming Revell Co., Old Tappan, N. J., p. 228.

[2] "The Aggression Syndrome," *Georgia State Bar Journal,* Vol. 9, May 1973, Number 4, p. 451, by H. Newcomb Morse; *The Anatomy of Human Destructiveness,* 1973, Holt, Rinehart and Winston, New York, N. Y., by Erich Fromm; and *On Aggression* by Dr. Konrad Lorenz, 1966.

our juvenile and criminal code and in the reduction of criminal acts of violence and aggression.