A95A2380. WATKINS v. SALVATION ARMY et al.
(470 SE2d 477)

RUFFIN, Judge.

This appeal is affirmed without opinion in accordance with Court of Appeals Rule 36 for all of the grounds set forth under the rule.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Andrews, Johnson and Smith, JJ., concur. McMurray, P. J., and Pope, P. J., dissent. Blackburn, J., not participating.*

POPE, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of the trial court's grant of summary judgment to the Salvation Army on Watkins' claims for negligent hiring or selection. A claim for negligent selection does not require that the tort have been committed in the scope of employment. *Henderson v. Nolting First Mtg. Corp.*, 184 Ga. 724 (2)

(193 SE 347) (1937). Even if the Salvation Army did not employ Readdick, it undoubtedly selected him to further its mission just as the nonprofit organization selected its volunteer in *Big Brother/Big Sister of Metro Atlanta v. Terrell*, 183 Ga. App. 496, 497 (1) (359 SE2d 241) (1987). The undisputed facts as outlined by the trial court create a jury issue as to whether the Salvation Army "knew or should have known of [Readdick's] criminal propensities." *Terrell*, 183 Ga. App. at 497 (1).

The evidence shows Readdick disclosed to the Salvation Army his three years spent in prison for possessing a firearm. A jury might reasonably decide that given this past history of lengthy prison service for a crime involving weapons, the Salvation Army should have probed deeper into Readdick's background based on this constructive notice. *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233, 234 (2) (378 SE2d 857) (1989); *Sparlin Chiropractic Clinic v. TOPS Personnel Svcs.*, 193 Ga. App. 181, 182 (387 SE2d 411) (1989); *Lear Siegler, Inc. v. Stegall*, 184 Ga. App. 27, 28 (360 SE2d 619) (1987).

The trial court's reliance on *Terrell*, 183 Ga. App. at 497 (1), for the proposition that the Salvation Army did all it could do to screen Readdick is misplaced. Unlike the nonprofit managers in that case, Salvation Army officials did have access to criminal records and had, in other Georgia offices, conducted criminal background checks on "programmers" such as Readdick. The crimes they would have discovered — two burglaries — may show Readdick's propensity to use his position to enter the dwellings of Salvation Army donors to commit violent felonies such as this rape. See OCGA § 16-7-1. Premises liability cases such as *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300 (454 SE2d 183) (1995), cited by the trial court, have no application to a negligent hiring case. Those cases focus on whether all the circumstances surrounding unrelated offenses committed by strangers and unknown assailants at different times placed a landowner on notice to take security precautions against a specific act of violent crime; see *J. C. Penney Co. v. Spivey*, 215 Ga. App. 680, 682 (1) (452 SE2d 191) (1994). Here, the key is whether the Salvation Army had reason to know Readdick was unsuited for this particular assignment. *Green v. Johnston Realty*, 212 Ga. App. 656, 659 (1) (442 SE2d 843) (1994).

The Salvation Army may have cloaked Readdick with some degree of apparent authority by giving him an identification badge bearing his name, photograph, and the words "Salvation Army." It sent him to the homes of Macon residents, including the apartment of this elderly victim, in furtherance of its charitable business of picking up donations. The director of Macon's Salvation Army testified that similar badges were given to Salvation Army employees to identify them to the public as such. The employee whom Readdick assisted in picking up donated goods from the plaintiff testified he was given such a

badge so that when he picked up goods from individuals, "if they see your picture with the badge on it, they won't be so afraid of everything." Because this same employee violated Salvation Army regulations, Readdick was allowed to come to Watkins' door, unaccompanied and wearing a badge identifying himself with this good organization, to retrieve her donated goods. When he later returned to her apartment to attack her, it appears she may have accepted him because of this prior association. Under these circumstances, a jury should determine whether a reasonable investigation would have disclosed Readdick's violent propensities, and whether Salvation Army officials were in a position to gain "knowledge that the [identification badge] which they were placing in [his] possession might be fraudulently utilized." *Jester v. Hill*, 161 Ga. App. 778, 783-784 (2) (288 SE2d 870) (1982). There is evidence that Readdick's "subsequent tortious and criminal actions against [Watkins] could reasonably have been anticipated, apprehended, or foreseen by [the Salvation Army] . . . as a probable or natural consequence of hiring him." (Citations and punctuation omitted.) *Edwards v. Robinson-Humphrey Co.*, 164 Ga. App. 876, 881 (3) (298 SE2d 600) (1982).

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED MARCH 15, 1996 — 

*Adams & Jordan, Virgil L. Adams, Walbert & Mathis, Charles A. Mathis, Jr.*, for appellant.

*Miller & Towson, Wallace Miller III, Chambless, Higdon & Carson, Mary M. Katz*, for appellees.