Gidgette CHAMBERS, Plaintiff,

v.

WAL–MART STORES, INC., d/b/a Sam's Club, Defendant.

No. Civ.A.1:95–CV–1979CC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 18, 1998.

Rose E. Goff, Greene, Buckley, Jones & McQueen, Atlanta, GA, for plaintiff.

Albert J. DeCusati, McLain & Merritt, Atlanta, GA, for defendant.

## ORDER

COOPER, District Judge.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and also alleges intentional infliction of emotional distress, assault and battery, negligent infliction of emotional distress, and negligent hiring or negligent retention. Pending before the court is defendant's Motion for Judgment as a Matter of Law [76–1]. The Magistrate Judge has issued a report recommending that defendant's motion be granted. Plaintiff has filed objections to the Magistrate Judge's report.

After carefully reviewing both the Magistrate Judge's findings of fact and conclusions of law, and plaintiff's objections, the court finds that the Magistrate Judge's report is correct in both fact and law and ADOPTS the recommendation of the Magistrate Judge in its entirety. This court agrees with the Magistrate Judge's conclusion that plaintiff did not file a timely charge with the EEOC. Plaintiff filed her complaint with the EEOC on October 11, 1994; therefore, plaintiff's burden is to show that the last discriminatory act occurred within 180 days of that date. The court finds that the only incident plaintiff identifies with reasonable certainty is the alleged sexual advance made by Steve Babcock in October 1993, almost one year before she filed her charge with the EEOC. The court concludes that plaintiff has not met her burden of showing by a preponderance of the evidence that a discriminatory act occurred within the mandatory 180 day period, and defendant is entitled to judgment as a matter of law.

The court also agrees with the Magistrate Judge's conclusion that there is no evidence of a hostile work environment so pervasive that defendant should have known of Babcock's conduct. Plaintiff did not complain of Babcock's conduct until April 23, 1994 or April 24, 1994, and at the direction of management, plaintiff made a written complaint on April 27, 1994. Management confronted Babcock with plaintiff's complaint on the same day, and Babcock resigned, effective April 27, 1994. The court finds that defendant's prompt actions in dealing with plaintiff's complaint shields defendant from vicarious liability for Babcock's actions. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662, 66 U.S.L.W. 4643 (1998).

Defendant is also entitled to judgment as a matter of law on plaintiff's retaliation claim. There is no evidence that Babcock knew plaintiff had engaged in any protect-

ed activity before Babcock began what plaintiff characterizes only as "yelling at her." Furthermore, it is undisputed that Babcock gave plaintiff an excellent evaluation after the October 1993 incident.

The court also finds that defendant is entitled to judgment as a matter of law on plaintiff's negligent retention claim. It is clear from the record that defendant takes the kinds of complaints made by plaintiff seriously. This is evidenced by the fact that within days after plaintiff made a written complaint against Babcock, management confronted Babcock with the allegations and obtained his resignation. The record simply does not support plaintiff's contention that defendant was negligent in retaining Babcock as an employee.

Accordingly, defendant's Motion for Judgment as Matter of Law [76–1] is GRANTED, and this case is DISMISSED.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

#### PART ONE
##### HISTORY OF THE CASE

This is a civil rights employment discrimination case filed by Gidgette Chambers, a female, who was employed as part of the Member Asset Protection Services (hereinafter "MAPS") division of Wal-Mart Stores, Inc., d/b/a Sam's Club. Specifically, the Plaintiff contends that her supervisor, Steve Babcock, made sexual advances toward her, thereby creating a hostile work environment in violation of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5) (hereinafter "Title VII"), and retaliated against her while she was employed at Wal–Mart Stores, Inc., when she complained about his amorous advances. The Plaintiff has also raised a claim of negligent retention under Georgia law.

Pursuant to Internal Operating Rule 920–10, this case was heard before this Court as a special master in a bench trial on Monday, May 18, 1998, through Wednesday, May 20, 1998. After hearing and considering all of the testimony and other evidence in the Plaintiff's case-in-chief, this Court concludes that the Plaintiff failed to make out a *prima facie* case of (1) hostile work environment, (2) retaliation, and (3) she failed to timely file her discrimination complaint with the Equal Employment Opportunity Commission ("E.E.O.C."). As a consequence, the defendant's Fed.R.Civ.P. 52(c) Motion for Judgment as a Matter of Law should be granted as to all three issues.[1] This Court's Findings of Fact and Conclusions of Law are set forth below.

Additionally, such Findings of Fact are set out for the purpose of considering Defendant's Motion for Judgment as a Matter of Law; and, in connection therewith, this Court has made no credibility determinations, and has considered and accepted all of the evidence in the light most favorable to Plaintiff. In the event that the District Court rejects this Report and Recommendation and remands the case to the undersigned for further Findings of Fact, this Court will then weigh the evidence and made credibility determinations regarding the testimony and evidence in making its final determination.

#### PART TWO

##### THE ISSUES

1. Whether the Plaintiff made out a *prima facie* case of hostile work environment sufficient to hold the defendant liable therefor.

2. Whether the Plaintiff made out a *prima facie* case of retaliation sufficient to hold the defendant liable therefor.

3. Whether the plaintiff timely filed her E.E.O.C. charge.

---

1. The defendant made its motion when the Plaintiff rested. At that time, this Court suggested that it take the motion under advisement, and that the defendant present its defense. The defendant rejected the suggestion and requested this Court to rule on the motion.

4. Whether the Plaintiff made out a *prima facie* case of negligent retention.

## PART THREE
### FINDINGS OF FACT

1. In 1993, Plaintiff Gidgette Chambers was employed as an associate at defendant's Sam's Club No. 8203.

2. In about September 1993, she accepted an offer from Sam's Club supervisor, Steve Babcock, to transfer and become a member of defendant's Member Asset Protection Services Division (MAPS), a part of defendant's security program. Indeed, Plaintiff had worked in security with Babcock verifying inventories at various Sam's Clubs before accepting the MAPS position.

3. At the time she transferred to the MAPS program and Babcock's supervision, she had never heard any rumors or complaints that Babcock had ever acted in a sexually harassing or otherwise inappropriate manner. Plaintiff also concedes that she had never had a problem with Babcock, nor had she ever seen Babcock behave in an inappropriate manner.

4. At all times relevant to this lawsuit, Defendant had in place a comprehensive, no tolerance policy toward sexual harassment. Defendant also had in place an effective grievance procedure.

5. Plaintiff alleges that she first had a problem with Babcock in October 1993, approximately one month after she joined the MAPS program. According to the Plaintiff, while she and Babcock were on a Texas business trip, Babcock, who had severe foot trouble, telephoned her in her room and asked her to bring him a cup of tea. When she entered his room, he tried to kiss her.

6. Upon returning to Atlanta, Plaintiff did not file a complaint of sexual harassment with Sam's; rather, Plaintiff approached the store manager, Monty Milliner, a friend, and vaguely inquired what would happen if someone high in Sam's management had done something wrong. She did not, however, allude to Babcock, nor did she articulate the alleged improper conduct. Rather, the Plaintiff implored him to keep her inquiry confidential as she had not yet decided what she wanted to do. In response, Milliner advised her that, in the absence of third-party witnesses, a complaint would be a swearing contest with one employee's word against the other.

7. The record is devoid of any evidence that any Wal–Mart employee ever saw or heard inappropriate behavior by Babcock directed at the Plaintiff. Neither did the Plaintiff ever acquiesce to any alleged sexual advance.

8. Specifically, management members Milliner and Griffith stated that neither had ever seen or ever heard of any harassing or inappropriate behavior by Babcock toward anyone prior to April 25, 1994, when Plaintiff finally lodged a sex discrimination complaint with management.

9. Neither had the Plaintiff ever complained to Milliner or any other member of management of any inappropriate conduct by Babcock toward Plaintiff after she returned from the October 1993 Dallas business trip.

10. Plaintiff made no other complaint until April 25, 1994, when she asked supervisor Terry Griffith a vague and non-specific question as to what would happen if someone in management had done something wrong. Ultimately, Griffith managed to prod the Plaintiff to articulate her complaint; and the Plaintiff told Griffith about Babcock's alleged conduct during the October 1993 Dallas trip. She did not, however, accuse Babcock of any other misconduct thereafter.

11. After hearing her complaint, Griffith directed the Plaintiff to furnish him with a complete written complaint. Plaintiff declined to furnish a written statement then, stating that she needed to go home and put her thoughts in order and furnish a complete account. In Plaintiff's opinion,

Griffith had a sympathetic ear and gave her a full opportunity to tell him her whole story. Griffith also told her he could take no action without the written complaint. Plaintiff finally furnished the written complaint statement on April 27, 1994.

12. Even though the Plaintiff had not yet furnished a written statement, Griffith instituted an investigation and began interviewing witnesses, and made a trip to Augusta, Georgia, therefor.

13. On April 27, 1994, when the Plaintiff finally gave Griffith her written statement, she noted that she had only discussed the matter with Milliner once, but did not furnish him with any of the details of the incident. Neither did she furnish Milliner with the name of the wrongdoer.

14. On April 27, 1994, Griffith and Steve Lindsey confronted Babcock with Plaintiff's allegations. In response, Babcock denied any inappropriate conduct, but, nevertheless, tendered his resignation. Griffith and Lindsey accepted Babcock's resignation. Babcock is now deceased and obviously unavailable as a witness to confirm or deny the allegations.

15. On April 27, 1994, Griffith also informed the Plaintiff that Babcock was no longer employed by Sam's Club.

16. Two days later, on April 29, 1994, Plaintiff resigned her position at Sam's, telling Milliner and Griffith that she had accepted an offer to work at another security company at a higher rate of pay. Although Milliner and Griffith attempted to persuade the Plaintiff to remain at Sam's, they were unsuccessful.

17. After the Texas incident, Babcock did not attempt to start any further sexual activity with the Plaintiff.

18. Starting around January or February 1994, Plaintiff told Babcock to cease his advances. She has failed to articulate any further sexual misconduct by Babcock, and agrees, in any event, that Babcock's alleged advances stopped. Plaintiff claims that subsequent thereto Babcock then yelled about her performance. The undisputed evidence shows, however, that Babcock yelled at all of his subordinates, male and female, without regard to gender.

19. In February 1994, as her supervisor, Babcock gave Plaintiff an excellent performance evaluation and a salary increase.

20. Prior to April 23 or 24, 1994, no member of Defendant's management had received any notice of any alleged harassment of Plaintiff by Babcock.

21. Prior to April 23 or 24, 1994, no member of Defendant's management had received any adverse information of harassment, improper fraternization, or any other improper conduct by Babcock toward any female associate.

22. Plaintiff *agrees* that she has encountered no harassment since Babcock's departure.

23. Plaintiff ultimately filed her charge of discrimination with the E.E.O.C. on October 11, 1994.

*PART FOUR*

### *CONCLUSIONS OF LAW*

1. *Procedural Pre–Requisites*

In order to file a cause of action alleging discrimination in violation of Title VII, Plaintiff must first prove that she filed a timely charge of discrimination with the E.E.O.C. within 180 days of the unlawful employment action. 42 U.S.C. § 2000e(5)(e). *See Pearson v. Macon–Bibb County Hospital Authority*, 952 F.2d 1274 (11th Cir.1992) (noting that the date of the discriminatory act starts the running of the 180–day period); *Rucker v. Western Electric Company*, 521 F.Supp. 986, 988 (N.D.Fla.1981).

2. *Plaintiff Failed to Timely File Her E.E.O.C. Charge*

■ The evidence before this Court shows that Babcock's last discriminatory act which was the subject of Plaintiff's complaint was the October 1993 incident on the Dallas trip. Although the Plaintiff

testified that Babcock made additional sexual advances after October 1993, she was unable to articulate any time when any such acts occurred. To some extent, her testimony was corroborated by the testimony of Keith Morris, who on one occasion allegedly observed Babcock hugging the Plaintiff and putting his hand on her thigh.

Plaintiff's testimony shows, however, that any such specific act(s) had ended by February 1994, when Plaintiff told Babcock to desist his advances. Consequently, the Plaintiff has failed to prove by a preponderance of the evidence that any such discriminatory acts occurred within 180 days of October 11, 1994, when she filed her Charge of Discrimination with the E.E.O.C. This Court must therefore find that Plaintiff failed to timely file her E.E.O.C. complaint. Accordingly her claim must be dismissed.

Assuming, *arguendo,* that the alleged conduct was continuing and that it occurred within 180 days of Plaintiff's E.E.O.C. complaint, this Court will consider whether Babcock's yelling and his telephone call to Plaintiff's residence complaining about her absence at work on sick leave created either (1) a hostile work environment or (2) constituted discriminatory retaliatory conduct based either on (a) Plaintiff's rejection of Babcock's sexual overtures or (b) her complaint. As shown hereafter, the evidence before this Court compels it to conclude, first, that Babcock addressed his yelling indiscriminately to both male and female subordinates, and third-person vendors; and next, the record is devoid of any evidence that Babcock even knew that the Plaintiff had engaged in protected conduct—that she had complained to Milliner about his conduct or that Milliner had breached his pledge of confidence with the Plaintiff. Hence the Defendant is entitled to judgment.

3. *Wal–Mart Stores Is Not Vicariously Liable For Its Employees Wilful Misconduct Hostile Work Environmental Sexual Harassment*

■ Building on the foundation it laid down in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and utilizing traditional agency principles, the Supreme Court on June 26, 1998, decided two cases in an effort to create a uniform and predictable standard for determining employer liability "for harm caused by misuse of supervisory authority" under the rubric of vicarious liability in cases of sex [and race] discrimination arising under Title VII. It first categorized such cases into two categories—(1) those cases which involve "a significant, tangible, employment action, i.e. a significant change in employment status, such as discharge, demotion, or undesirable reassignment" (*Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2279–81, 2283, fn. 1, 2285–86, 2291, fn. 4, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2261, 141 L.Ed.2d 633 (1998)); and (2) those which only involve a sexually hostile work environment and do not involve an actual change in employment status. *Faragher* at 2285–86; *Burlington* at 2261.

The Court further determined that its decisions dealt only with employer liability cases which involve intentional misconduct of a supervisor toward the supervisor's subordinate. In connection therewith, it specifically rejected any defenses that were based on allegations that the supervisor was acting outside of the scope of the supervisor's employment because employer liability was based on the fact that the employer had placed the supervisor in a position to misuse the supervisor's power. *Faragher* at 2284–85; *Burlington* at 2261.

With respect to environmental cases previously labeled as creating a hostile work environment (a term it found to be of limited utility) created by the intentional acts of supervisors, it held, first, that an employer would be vicariously liable for the intentional acts of its supervisors if

(a) the supervisor's actions created a sexually hostile environment;

(b) the supervisor creating the hostile work environment was the victim's immediate supervisor, or a successively higher supervisor (i.e. one within the "chain of command"); and

(c) the sexually hostile work environment did not involve a significant, tangible employment action (*Burlington* at 2261) and involved either severe or pervasive conduct. *Id.*

Second, it held that if the victim made out a *prima facie* case of hostile work environment, the employer may still defeat liability by interposing a two part affirmative defense—

1. First, it must show that it exercised reasonable care to prevent and correct promptly any sexual harassing behavior (*Burlington* at 2261). Although not controlling the employer's adoption of an anti-harassment policy and complaint procedure may satisfy this prong. (*Faragher* at 2279–81).

2. Second, it must show that the victim employee failed to mitigate damages—the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington* at 2261; *Faragher* at 2279.

While specifically rejecting use of the term "quid pro quo" sex discrimination because it had only limited usefulness, it also held that (1) an employer is vicariously liable for the intentional misuse of authority by a supervisor toward the supervisor's subordinate where the supervisor subjects the victim employee to a significant, tangible, employment action (as previously noted, i.e. a significant change in employment status such as discharge, demotion, or undesirable reassignment), and such misuse is based on a supervisor's demand for sexual favors; and, (2) the employer is not entitled to raise an affirmative defense. *Burlington* at 2260–61; *Faragher* at 2279-2281.

■ As these pronouncements do not create new rules of law, they apply retroactively to any cases pending on June 26, 1998, including cases on appeal. See *Reynolds v. CSX Transportation, Inc.,* —— U.S. ——, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998). As a consequence, this Court must apply those standards to this case.

■ Assuming, *arguendo,* that Plaintiff had shown by a preponderance of the evidence that she had timely filed her charge of discrimination with the E.E.O.C., this Court will now address the issue of whether the Plaintiff has proven by a preponderance of the evidence that she was subjected to a hostile work environment. The Eleventh Circuit has indicated that a Plaintiff can make out a *prima facie* hostile work environment case in either of two ways. The first is by proof that she complained to higher management (i.e. that higher management actually knew of the misconduct), and that higher management failed to act. *Faragher v. City of Boca Raton,* 111 F.3d 1530 (11th Cir.1997), rev. on other grounds, *supra,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (No. 97–282); *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989); *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982); *Huddleston v. Roger Dean Chevrolet,* 845 F.2d 900, 904 (11th Cir.1988). Plaintiff may also prove hostile work environment sexual harassment by showing that the offensive conduct was so pervasive that her employer should have known of the conduct. *Huddleston,* 845 F.2d at 904; *Henson,* 682 F.2d at 905.

■ This Court is compelled to find, as to the latter, that Plaintiff has failed to prove by a preponderance of the evidence that the alleged hostile workplace conduct created by Babcock's actions was so pervasive that management should have known of its existence. Consequently the issue turns on whether the Plaintiff complained to higher management—whether her complaint to Milliner was sufficient to put the employer on notice to impose vicarious

liability. It is undisputed that in October, 1993, Plaintiff complained to Milliner that Babcock's actions on the Dallas trip constituted sexual harassment.[2] It is, however, undisputed that Plaintiff implored Milliner to retain her complaint in confidence, as she had spoken to him as a friend, not as a member of management; and she had not yet made a decision as to whether she wanted to pursue the matter further.

 Plaintiff also argues that, in fact, Milliner had attempted in some way to dissuade her from filing a formal complaint. The undisputed evidence shows, however, that Milliner simply shared a basic truth with her: if only two people were present, the dispute is a swearing contest, and its resolution required management to believe one or the other as it would be no more than her word against Babcock's.

 This Court cannot find that Milliner's advice constituted an attempt by him to discourage Plaintiff. In short, this Court agrees with the *Faragher* court's reasoning—for vicarious liability purposes, notice to a manager does not constitute notice to management when the complainant asks the manager, as a friend, albeit a member of management, to keep the information confidential. Compare *Burlington Industries, Inc.* at 2264.

This Court concludes, therefore, that the first effective complaint by Plaintiff to management that Babcock had engaged in improper behavior was the Plaintiff's call to Griffith in April 1994 to complain about Babcock. Plaintiff contacted Griffith on either April 23, 1994, or April 24, 1994, after the Plaintiff had received telephone calls to her home from Babcock, who demanded that she return to work.[3] Griffith arranged to meet with the Plaintiff at the Roswell Wal–Mart store the following day, April 24, 1994. At that time, Plaintiff spe-

cifically told Griffith her version of Babcock's conduct.

During the April 24, 1994, meeting, Griffith asked Plaintiff to furnish him with a statement. Plaintiff declined to prepare a statement at that time, stating that she preferred to go home and think about it, and then put her thoughts in order. Ultimately, Plaintiff prepared a statement and gave it to Griffith several days later on April 27, 1994. In fact, according to Plaintiff, she was called at home by her father, a Wal–Mart employee, and was instructed to come to work and provide Griffith with the statement he had requested. When she returned to the store, her father met her in the parking lot, and the Plaintiff wrote the statement in her car, and gave it to Griffith. It should be noted that this statement is devoid of any allegations of improper conduct by Babcock subsequent to the Dallas trip.

This Court concludes, therefore, that Plaintiff did not notify management until, at the earliest, April 24, 1994, or at the latest, April 27, 1994, that Babcock was a sexual harasser. Griffith did not, however, remain idle pending his receipt of Plaintiff's written complaint. Rather, he attempted to investigate the incident and Babcock's conduct, which investigation included interviewing other employees and third persons, including trips to Augusta and Rome to interview witnesses. Although Griffith did not specifically indicate with whom he spoke in Augusta, he said he went to Augusta and took a statement from a female employee, and he also traveled to Rome to investigate Plaintiff's allegations. The dates of these interviews are set out in the statements.

On the same day management received Plaintiff's written statement, April 27, 1994, Griffith and Lindsey reviewed the Plaintiff's complaint with Babcock. Grif-

---

**2.** Defendant disputes Plaintiff's version of Plaintiff's conversation with Milliner.

**3.** Giving Plaintiff the benefit of a doubt, it might be that she suspected that, because she

had heard that Babcock had terminated her predecessor, Rebecca Martinez, she feared that she awaited the same fate if she returned to work.

fith and Lindsey also reviewed with Babcock the statements they had obtained from other witnesses. During this interview, Babcock immediately offered to resign. In response, Griffith and Lindsey immediately accepted Babcock's resignation, which action removed Babcock from the Wal–Mart payroll on April 27, 1994.

In *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Court held that for sexual harassment to be actionable it must be so severe and pervasive that it alters the conditions of the victim's employment so as to create an abusive working environment. It consists of both an objective and a subjective component. Objectively, it must be so severe and pervasive that a reasonable person would find it hostile or abusive; and subjectively, the employee found it to be so. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This analysis requires this Court to look "at all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Id.,* at 23. In this regard it noted that Title VII does not prohibit the genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. Hence a football coach's slap to an employee's buttocks may or may not be actionable, depending on the circumstances and the employee involved: His slap of the player's buttocks as he enters the game may not be actionable whereas his slap of a female employee's derriere, such as his secretary's, may be. *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Thus "simple teasing, offhand comments, and isolated incidents (unless extremely serious)," sporadic use of abusive language, and gender-related jokes, will not alter the terms and condi-

tions of employment. In short, they are nothing more serious than the ordinary tribulations of the workplace. *Faragher* at 2282–83.

Under these circumstances, this Court must conclude, as a matter of law, that Wal–Mart's action in establishing its affirmative defense—that only two (2) or three (3) days at the worst, transpired between the receipt of the complaint and its satisfactory resolution was reasonably prompt action by the employer, and insulates it from vicarious liability for Babcock's alleged acts. *Faragher, id; Burlington Industries, Inc., id; Fleming v. Boeing Co.,* 120 F.3d 242, 247–48 (11th Cir.1997).

### 4. The Plaintiff Failed to Make Out a Prima Facie Case of Retaliation

As previously noted, to make a *prima facie* case of retaliation under Title VII, the Plaintiff must show by a preponderance of the evidence that:

(1) She engaged in protected conduct under Title VII;

(2) Simultaneously therewith or subsequently thereto, she suffered an adverse employment action; and

(3) There is some causal connection between the protected activity and the adverse employment action.

*Morgan v. Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992); *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1520 (11th Cir.1991).

In this case, the only evidence offered by Plaintiff shows that after February 1994, Babcock yelled at her, as well as other male and female employees and vendors. This is not sufficient to create an adverse employment action within the meaning of Title VII. As was stated in *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995), Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have an adverse effect upon ultimate decisions. Ultimate decisions include acts such as hiring,

granting leave, discharging, promoting, and compensating. A material detriment is not required. *Collins v. State of Illinois,* 830 F.2d 692, 702–703 (7th Cir.1987). In addition, it has been held that a reprimand, which might subject an employee to subsequent dismissal for further misconduct may also constitute an adverse employment action. *Fowler v. Sunrise Carpet Industries,* 911 F.Supp. 1560, 1582 (N.D.Ga.1996).

In this case, the only evidence of protected activity which predated Babcock's yelling was the Plaintiff's initial, vague complaint to Milliner regarding the incident in Dallas during the October 1993 trip; and the record is devoid of any evidence to show that Milliner breached the Plaintiff's confidence and shared the information with anyone, much less with Babcock. Rather, the evidence shows that Babcock knew nothing of the Plaintiff's complaint. Neither has she shown that she suffered an adverse employment action—that she, in fact, suffered either a material detriment or an intangible detriment to her own continued employment. At worse his yelling created an unpleasant atmosphere for everyone in the work space, including the Plaintiff. Furthermore, the evidence shows that in February 1994, Babcock gave the Plaintiff an excellent evaluation, as well as a pay increase. Consequently, the Plaintiff has failed to show by a preponderance of the evidence that she was retaliated against, or that there was a causal connection between her protected activity and the alleged retaliation (yelling). Plaintiff has also failed to prove by a preponderance of the evidence that Babcock's yelling created a sexually hostile work environment. Consequently, Defendant is entitled to judgment as a Matter of Law on this ground.

### 5. *Negligent Retention*

An employer commits the tort of negligent retention when a plaintiff is injured by an employee, and the employer has retained that employee despite the employer's knowledge of the employee's violent or criminal propensities. *See Kemp v. Rouse–Atlanta, Inc.,* 207 Ga.App. 876, 878, 429 S.E.2d 264 (1993), *cert. denied,* 1993 Ga. Lexis 609 (1993); *Southern Bell Tel. & Tel. Co. v. Sharara,* 167 Ga. App. 665, 307 S.E.2d 129, 131 (1983). The analysis for a cause of action for negligent retention is essentially the same as the analysis for vicarious liability. However, there is no requirement under Georgia law that a victim make his complaint to a superior management: any complaint to any manager is sufficient to put the employer on notice.

In the instant case, as previously noted, the Plaintiff lodged a complaint with a manager, but she asked that the manager keep the complaint confidential while she pondered her course of action. In that regard, this Court must observe the following as to both Title VII and negligent retention: ordinarily for profit companies are created to make profits for their shareholders, whose capital created the corporations, which goal can best be accomplished when a harmonious atmosphere exists among the companies' officers and other employees. Compare *Faragher* at 2284. Thus, effective management requires management to be fully aware of its employees' concerns and activities in the workplace. The company does not, however, stand in loco parentis to its employees; and its employees possess some privacy rights at work, particularly in matters that are solely private.

If a company perceives that it is having unrest amongst its employees, effective management requires that it investigate the nature of the problem, particularly if it affects a harmonious workplace and productivity. To the extent that it is able, the effective company will attempt to rectify that problem causing disharmony.

Federal courts, however, do not sit as management advisors to businesses on how they ought to conduct their businesses. This Court's jurisdiction is limited to resolving cases and controver-

sies that arise under the Constitution and relevant laws. In short, neither federal law nor agency law specifically require a company to automatically investigate workplace gossip or rumors even though such may be wise: It can, rather, condition its obligation to investigate on the filing of a formal complaint. Hence this Court cannot hold a company liable for failing to investigate prior to receipt of a written complaint when it has no legal obligation to do so, regardless of whether it may be deemed good business practice to have initiated an informal investigation prior to the receipt of a formal complaint. In any event the Defendant in this case commenced its investigation immediately even though the Plaintiff had failed to furnish a written complaint. In short, it has satisfied any obligation it had in employing Babcock.

As the Plaintiff failed to make out a *prima facie* case of negligent retention by a preponderance of the evidence, Plaintiff's cause of action for negligent retention must be rejected as a Matter of Law.

*PART FIVE*

### *CONCLUSION*

For the aforementioned reasons,

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Judgment as Matter of Law be GRANTED as to Plaintiff's claims for hostile work environment sexual harassment, retaliation, and negligent retention.

IT IS SO RECOMMENDED.